**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

| | |
|---|---|
| **AGNES MUKANTAGARA, et al.,** | |
| **Plaintiffs-Appellants,** | |
| **vs.** | **C.A. 24-4071** |
| **U.S. Department of Homeland Security, et al.,** | **D.C. No.: 20-CV-00897** |
| **Defendants-Appellees.** | |

**DEFENDANTS-APPELLEES' PETITION FOR REHEARING
EN BANC**

Defendants-Appellees petition for rehearing en banc of this Court's January 12, 2026, opinion under Federal Rule of Appellate Procedure 40.

# TABLE OF CONTENTS

Rule 40(b)(2) Statement.........................................................................1

Question Presented..............................................................................3

Rehearing En Banc Standard ...........................................................4

Legal Background ...............................................................................4

Relevant Factual Background...........................................................8

Argument.............................................................................................9

    I.  The Panel's Decision Contradicts the Plain Text. ...................10

    II. The Panel's Decision Creates a Clear Circuit Split.................16

    III.This Appeal Presents a Recurrent Question of
       Exceptional Importance...........................................................18

Conclusion .........................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Alzaben v. Garland,*
  66 F.4th 1 (1st Cir. 2023) ...............................................................15

*Bouarfa v. Mayorkas,*
  604 U.S. 6 (2024) ...........................................................................14

*Fofana v. Noem,*
  163 F.4th 1135 (8th Cir. 2026)....................................................3, 17

*Guerrero-Lasprilla v. Barr,*
  589 U.S. 221 (2020) ....................................................................7, 20

*Hatchet v. Andrade,*
  106 F.4th 574 (6th Cir. 2024)........................................................15

*Hosseini v. Johnson,*
  826 F.3d 354 (6th Cir. 2016) ........................................................15

*INS v. St. Cyr,*
  533 U.S. 289 (2001) .......................................................................20

*Kucana v. Holder,*
  558 U.S. 233 (2010) .............................................................7, 11, 14

*Mejia Rodriguez v. DHS,*
  562 F.3d 1137 (11th Cir. 2009) ...............................................14, 15

*Mukantagara v. Noem,*
  164 F.4th 765 (10th Cir. 2026)................................................passim

*Ortez v. U.S. Citizenship & Immigr. Servs.,*
  169 F.4th 269 (4th Cir. 2026)........................................................18

*Patel v. Att'y Gen.*,
971 F.3d 1258 (11th Cir. 2020) ....................................................... 15

*Patel v. Garland*,
596 U.S. 328 (2022) ................................................................. passim

*Shaiban v. Jaddou*,
97 F.4th 263 (4th Cir. 2024).......................................................2, 18

*Slack Techs., LLC v. Pirani*
598 U.S. 759 (2023) .................................................................... 13

*Wilkinson v. Garland*,
601 U.S. 209 (2024) ...................................................................... 9

*Zia v. Garland*,
112 F.4th 1194 (9th Cir. 2024)...........................................2, 16, 17

## Statutes

6 U.S.C. § 271(b)(3) ........................................................................ 4

8 U.S.C. § 1101(a)(42) ..................................................................... 5

8 U.S.C. § 1159(b) .................................................................... 13, 19

8 U.S.C. § 1157(c) ........................................................................... 4

8 U.S.C. § 1157(c)(1).................................................................... 4, 5

8 U.S.C. § 1157(c)(4).................................................................5, 8, 14

8 U.S.C. § 1158(b)(3)(A) ............................................................... 19

8 U.S.C. § 1182(e).......................................................................... 19

8 U.S.C. § 1229(b) ......................................................................... 14

8 U.S.C. § 1252(a)(2)(B) ................................................................ passim

8 U.S.C. § 1252(a)(2)(D) .............................................................. 7, 8, 16

8 U.S.C. § 1254a(a)(1) ......................................................................... 19

8 U.S.C. § 1255 ................................................................................... 13

## **Rules**

10th Cir. R. 40.1(B) ............................................................................... 4

Fed. R. App. P. 40(b)(2)(B) ................................................................... 4

## **Other Authorities**

H.R. Rep. No. 108-724, pt. 6 (2004) .................................................... 20

H.R. Rep. No. 109-72 (2005) ............................................................... 20

## RULE 40(B)(2) STATEMENT

This Court should grant rehearing en banc to correct a decision that has created a split with three circuits and can have far-reaching consequences that undo Congress's design for judicial review under the Immigration and Nationality Act ("INA"). In the INA, Congress channeled judicial review to courts of appeals through Petitions for Review ("PFRs") of certain discretionary decisions by U.S. Citizenship and Immigration Services ("USCIS"), and in doing so, Congress expressly precluded district court jurisdiction. Congress did so to prevent piecemeal litigation and interference with orderly administration of the immigration laws.

The panel decision threatens to wreak havoc on Congress's carefully crafted regime for judicial review. Here, Ms. Mukantagara's removal proceedings are ongoing, and she can ultimately raise the same legal issues in a PFR that she raises here. But Appellants instead brought a grab-bag of claims in district court while Ms. Mukantagara's proceedings remain pending before the Board of Immigration Appeals ("BIA") and Mr. Shyaka's PFR remains held in

abeyance pending the resolution of this lawsuit. The panel held that such a circumvention of Congress's design was permissible by holding that the bar on review of discretionary decisions in Clause (ii) of 8 U.S.C. § 1252(a)(2)(B) does not apply to a subsidiary question that is subsumed within the discretionary decision (here, the question of whether Ms. Mukantagara persecuted Tutsis in Rwanda and therefore does not qualify as a "refugee," which is part of the determination to terminate her refugee status). And the panel reached that holding even though the Supreme Court held in *Patel* that subsidiary decisions are covered by the preceding Clause (i), *see Patel v. Garland*, 596 U.S. 328 (2022), and even though Clause (ii) is supposed to be a catchall provision.

The panel's decision creates a circuit split by directly conflicting with the only three circuit-court decisions addressing this issue. The Fourth, Eighth, and Ninth Circuits have all applied the Supreme Court's decision in *Patel* to the catchall provision in Clause (ii) and held that predicate-eligibility determinations made as part of discretionary decisions are shielded from judicial review. *Shaiban v. Jaddou*, 97 F.4th 263 (4th Cir. 2024); *Zia v. Garland*, 112 F.4th 1194

(9th Cir. 2024); *Fofana v. Noem*, 163 F.4th 1135 (8th Cir. 2026), *pet. for cert. filed*, No. 25-1154 (U.S. Apr. 7, 2026)). No court of appeals has adopted the panel's position in this case.

Aside from the clear split that this decision creates, the consequences of this case are of exceptional importance. If the panel decision stands, litigants in removal proceedings may try to bring suits in district court against all manner of subsidiary factual or legal issues that form part of discretionary decisions that Congress wanted to shield from district court litigation, and may thereby stymie ongoing immigration proceedings. Indeed, the issue in this case can affect hundreds of thousands of immigration applications that USCIS adjudicates, and many more similar discretionary decisions exist. The panel decision's reasoning therefore threatens to open the floodgates of district court litigation that would burden the courts and undermine the statutory review regime that Congress designed. Thus, this Court's review en banc is amply warranted.

## QUESTION PRESENTED

Whether the district court had jurisdiction to review USCIS's predicate decision that formed part of its ultimate discretionary

decision when Congress, through 8 U.S.C. § 1252(a)(2)(B), expressly barred district court review and instead channeled limited review solely to the courts of appeals through PFRs from the BIA.

## REHEARING EN BANC STANDARD

Rehearing en banc is warranted where, *inter alia*, there is a conflict with a decision of the United States Supreme Court, an authoritative decision of another United States court of appeals, or the proceeding involves a question of exceptional importance. Fed. R. App. P. 40(b)(2)(B)–(D); 10th Cir. R. 40.1(B).

## LEGAL BACKGROUND

USCIS[1] may, in its discretion, admit a certain number of refugees to the United States each year. 8 U.S.C. § 1157(c)(1). If, after admission, USCIS determines that an alien was not eligible for refugee status, the agency may terminate such status:

---

[1] The INA authorizes the "Attorney General" to admit refugees and confer refugee status onto aliens. 8 U.S.C. § 1157(c). The Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (Nov. 25, 2002), amended the INA, and USCIS, a subagency of the Department of Homeland Security assumed the authority to adjudicate refugee applications. 6 U.S.C. § 271(b)(3). Therefore, the authority of the "Attorney General" in § 1157 is delegated to USCIS.

> The refugee status of any alien (and of the spouse or child of the alien) may be terminated by [USCIS] pursuant to such regulations as [USCIS] may prescribe if [USCIS] determines that the alien was not in fact a refugee within the meaning of [8 U.S.C. §] 1101(a)(42) at the time of the alien's admission.

*Id.* § 1157(c)(4). The alien was not "in fact a refugee" if she "ordered, incited, assisted, or otherwise participated in the persecution of any person[,]" thereby meeting the so-called "persecutor bar." *Id.* § 1101(a)(42)(B).

Congress sharply circumscribed judicial review of USCIS's discretionary decisions and stripped federal courts from reviewing "(i) any judgment regarding the granting of relief" under certain provisions governing discretionary relief, and "(ii) any other decision or action . . . the authority for which is specified under this subchapter" to be in the agency's discretion, other than the granting of asylum. § 1252(a)(2)(B).

In *Patel*, the Supreme Court held that Clause (i) strips federal courts of jurisdiction to review an agency's factual determinations made as part of discretionary-relief proceedings under § 1255. The Court held that "judgment" under Clause (i) means "any authoritative

decision" and that, under this broad definition, Clause (i) "prohibits review of *any* judgment *regarding* the granting of relief under" the enumerated provisions listed in that subsection. *Patel*, 596 U.S. at 337–38 (emphases in original). In doing so, the Court explained that Clause (i)'s jurisdictional bar "does not restrict itself to certain kinds of decisions." *Id.* at 338. Focusing on the plain language in § 1252(a)(2)(B), the Court noted that "any" has an "expansive meaning" and the use of the word "regarding" similarly "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Id.* at 338–39 (internal quotation marks and citation omitted). "Thus, § 1252(a)(2)(B)(i) encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief." *Id.* at 339 (emphasis in original). Notably, the Court rejected the interpretation that Clause (i) was limited to only "discretionary judgments or the last-in-time judgment[,]" *id.* at 338, because "[h]ad Congress intended instead to limit the jurisdictional bar to 'discretionary judgments,' it could easily have used that language—as it did elsewhere in the immigration code." *Id.* at 341.

While *Patel* pertains to Clause (i), it informs the second part of the jurisdictional bar, Clause (ii), because, given the "proximity" of the two Clauses and "the words linking them—'any other decision'"—the Supreme Court found that Clause (ii) is "a catchall provision covering" all "decisions of the same genre" as Clause (i). *Kucana v. Holder*, 558 U.S. 233, 246 (2010).

Congress has permitted review of "constitutional claims or questions law," but only when "raised upon a petition for review filed with an appropriate court of appeals in accordance with this section"—not in district court. 8 U.S.C. § 1252(a)(2)(D). That jurisdiction-savings clause generally preserves review of nondiscretionary questions, such as refugee eligibility, raised in a PFR before a federal appellate court, even when those questions feed into another discretionary determination. *See Patel*, 596 U.S. at 339. Thus, in *Patel*, § 1252(a)(2)(D) preserved jurisdiction over "questions of law," while the "questions of fact" at issue remained subject to the jurisdictional bar. *Id.* Section 1252(a)(2)(D)'s carve-out extends to mixed questions of law and fact—that is, the application of a legal standard to facts. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020).

Section 1157(c)(4) is within the "subchapter" encompassed by § 1252(a)(2)(B) and district-court review over USCIS's decision to terminate refugee status, and any antecedent decision, including whether an alien met the definition of "refugee" when she was admitted, is unavailable. But an alien whose status USCIS terminates is not without recourse: she can challenge the termination, and all predicate decisions, through a PFR. 8 U.S.C. § 1252(a)(2)(D).

**RELEVANT FACTUAL BACKGROUND**

On January 12, 2026, a panel of this Court reversed the district court's decision dismissing Appellants' case, finding that Clause (ii) does not apply to nondiscretionary determinations that form part of the ultimate discretionary decision.

The panel concluded that the decision to terminate refugee status "involves two steps": (1) a nondiscretionary eligibility determination, that is, whether the alien met the definition of "refugee," and (2) the ultimate discretionary determination to terminate. *Mukantagara v. Noem*, 164 F.4th 765, 768 (10th Cir. 2026).

The panel concluded that when the INA directs USCIS to assess "statutory eligibility criteria" as a first step before exercising

8

discretion in a second step, the first step is "not discretionary." *Id.* at 771 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 218 (2024)). Therefore, the panel determined that Clause (ii) does not preclude a district court from reviewing USCIS's finding that Ms. Mukantagara was not, in fact, a refugee. *Id.*

The panel rejected the government's argument that under *Patel*, all predicate nondiscretionary determinations are subsumed into the ultimate discretionary determination. It reasoned that, because *Patel*'s holding rests on words particular to Clause (i)—"any judgment" and "regarding the granting of relief"—*Patel*'s holding did not apply to Clause (ii). *Id.* at 773. It further rejected the argument that Clause (ii) is a "catchall" to Clause (i), because the Clauses contain "distinct language" (*i.e.* "any judgment" in Clause (i) versus "any other decision or action" in Clause (ii)) and therefore, the Clauses do not "necessarily travel together." *Id.*

## ARGUMENT

The panel decision erroneously limits the reach of the bar on review of discretionary decisions in § 1252(a)(2)(B). The decision contravenes the plain text of the statute and creates a circuit split with

three other courts of appeals on this exact issue. And the decision would undermine Congress's jurisdictional channeling of legal questions to review in courts of appeals after proceedings before the BIA, potentially rendering the jurisdictional bar an easily-evaded nullity and opening the floodgates for all applicants denied discretionary-immigration relief to sue in district court. En banc review is plainly warranted.

## I.    The Panel's Decision Contradicts the Plain Text.

Section 1252(a)(2)(B) unambiguously bars review of the ultimate decision to terminate refugee status. But, in creating that judicial-review bar, Congress cut broader still, shielding "*any* judgment *regarding*" the granting of certain discretionary relief in Clause (i) and, more widely still, in Clause (ii), "*any other* decision or action" that Congress deemed to be in USCIS's discretion. 8 U.S.C. § 1252(a)(2)(B) (emphases added). Congress thus barred judicial review over discretionary decisions, including challenges to antecedent steps in those decisions. To hold otherwise would eviscerate the jurisdictional bar and allow litigation to end-run any barriers to judicial review through artful pleading.

In *Patel*, the Supreme Court held that "judgment" in Clause (i) means "any authoritative decision" and the provision "encompasses not just 'the granting of relief' but also any judgment *related* to the granting of relief"—including predicate questions of eligibility. *Patel*, 596 U.S. at 337–39 (emphases in original).

*Patel*'s analysis informs the meaning of Clause (ii). In *Kucana*, the Supreme Court explained that "Congress added in [C]lause (ii) a catchall provision covering 'any other decision'" made discretionary by statute, and Clause (i) "is instructive in determining the meaning" of Clause (ii)." *Kucana*, 558 U.S. at 246–47. *Kucana* further advised that the Clauses should be interpreted as covering similar types of judgments: "The proximity of clauses (i) and (ii), and the words linking them—'any other decision'—suggests that Congress had in mind decisions of the same genre, *i.e.*, those made discretionary by legislation." *Id.* at 246–47.

Given its "catchall" nature, decisions insulated from review under Clause (ii) cannot be narrower than those insulated under Clause (i). Therefore, because Clause (i)'s prohibition on judicial review of "any judgment" applies to nondiscretionary predicate-

11

eligibility determinations, Clause (ii)'s prohibition on review of "any other" discretionary "decision or action" likewise precludes review over those same determinations.

Despite this clear instruction, the panel disregarded *Kucana*, erroneously holding that *Patel* "does not apply to § 1252(a)(2)(B)(ii)." *Mukantagara*, 164 F.4th at 772–73. The panel held that *Patel* was inapplicable because that decision only interpreted Clause (i) and relied on the words "any judgment" and "regarding the granting of relief" to hold that Clause (i) covers eligibility requirements, whereas the phrase "regarding the granting of relief," does not appear in Clause (ii). *Id.* at 773. Instead, the panel explained, Clause (ii) uses the phrase "specified . . . to be in the [agency's] discretion" and thereby "narrows § 1252(a)(2)(B)(ii) to reach only actions and decisions involving discretion." *Id.* (alteration in original). But the panel ignored the language of Clause (ii), "any *other* decision or action . . . the authority for which is specified under this subchapter," which demonstrates that Congress was treating those decisions in the same way as the decisions just named in Clause (i). Moreover, any challenge to the ultimate discretionary decision, whether framed as a procedural or substantive

defect, is inherently a challenge to the discretionary decision itself. Indeed, that is the case here, as Appellants expressly seek to overturn the termination of refugee status. And Clause (ii)'s text removes any doubt by expressly barring review of "any other decision or action," not just the final decision.

The panel also cited a footnote in *Slack Technologies v. Pirani* asserting that the Supreme Court "cautioned that when two neighboring provisions 'contain distinct language,' those provisions don't 'necessarily travel together.'" *Id.* (quoting 598 U.S. 759, 770 n.3 (2023)). But the provisions at issue in *Slack Technologies* were completely separate sections, § 11 and § 12, of the Securities Act of 1933. *Slack Techs., LLC*, 598 U.S. at 770 n.3. Here, Clauses (i) and (ii) are parts of the same subsection, 8 U.S.C. § 1252(a)(2)(B); indeed, the entirety of § 1252(a)(2)(B) is *one sentence*. 8 U.S.C. § 1252(a)(2)(B).

The panel's decision also leads to strange results. For example, Clause (i) would bar review of all decisions subsumed within an adjustment of status decision under § 1255, but under the panel's decision, Clause (ii) might *not* do so for equally discretionary adjustment of status decisions under § 1159(b). Similarly, Clause (i)

would bar review of subsumed questions within a determination under § 1229b(a), through which the Attorney General may cancel removal for a permanent resident *only if* he determines that the permanent resident meets certain eligibility requirements. *Id.* § 1229(b)(a). Yet the panel reached a different result for the similar determination at issue here, through which USCIS may terminate refugee status *only if* the alien did not meet the definition of "refugee" at the time she was admitted. *Id.* § 1157(c)(4). This is certainly a decision of the "same genre" that Congress had in mind when creating the jurisdictional bar at § 1252(a)(2)(B)—"those made discretionary by legislation." *Kucana*, 558 U.S. at 246–47. "If the provisions listed in § 1252(a)(2)(B)(i) pertain to discretionary agency determinations," then § 1157(c)(4) must too. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 15 (2024).

To support its holding that Clause (ii) is inapplicable, the panel improperly relied on pre-*Patel* cases and cases whose analyses are no longer valid. For example, the panel cited an Eleventh Circuit case involving USCIS's denial of re-registration for Temporary Protected Status ("TPS") to an alien convicted of certain crimes that were arguably not a "conviction" for immigration purposes. *Mejia Rodriguez*

*v. DHS*, 562 F.3d 1137, 1146 (11th Cir. 2009) (per curium). But *Mejia Rodriguez* predates *Patel* and *Kucana*. Moreover, while the Eleventh Circuit has not explicitly overruled *Mejia Rodriguez*, it has, in subsequent cases, rejected *Mejia Rodriguez*'s distinction between discretionary and nondiscretionary determinations. *E.g. Patel v. Att'y Gen.*, 971 F.3d 1258, 1277–78 (11th Cir. 2020) (en banc) *aff'd sub nom. Patel v. Garland*, 596 U.S. 328 (2022).

Similarly, the panel relied on a 2016 Sixth Circuit decision which held that "[c]ourts may review 'non-discretionary decisions that underlie determinations that are ultimately discretionary,'" including statutory admissibility underlying discretionary adjustment of status. *Hosseini v. Johnson*, 826 F.3d 354, 358 (6th Cir. 2016). However, the Sixth Circuit recently held that, post-*Patel*, *Hosseini*'s distinction "between discretionary and non-discretionary determinations is no longer tenable" and "*Patel* bars federal-court review of USCIS's factual determinations." *Hatchet v. Andrade*, 106 F.4th 574, 580 n.1 (6th Cir. 2024).

The panel also relied on a First Circuit PFR case. *Alzaben v. Garland*, 66 F.4th 1, 6 (1st Cir. 2023). But because that case arose

15

from a PFR after administrative proceedings, it did not address *district court* jurisdiction.

"[N]o court shall have jurisdiction to review" means what it says. That prohibition not only covers final discretionary decisions but also "any" subsidiary judgment, decision, or action that is part of those decisions. 8 U.S.C. § 1252(a)(2)(B). Congress forbade federal courts from second-guessing such decisions and any contrary approach would render the broad-sweeping jurisdictional bar meaningless while allowing district court suits to stymie orderly administration of the immigration laws. Congress permitted review of constitutional challenges, questions of law, and mixed questions of law and fact, but *only* in PFRs—not piecemeal district court litigation. *Id.* § 1252(a)(2)(D).

## II. The Panel's Decision Creates a Clear Circuit Split.

The panel's decision not to apply *Patel* to Clause (ii) directly conflicts with authoritative decisions from three other circuit courts.

The Ninth Circuit has held that *Patel* establishes that any underlying eligibility determinations fall within Clause (ii)'s scope. *Zia*, 112 F.4th at 1200–01. That court explained that *Patel*'s

16

interpretation of "any judgment" in Clause (i) "equally applies to 'any other decision or action'" in Clause (ii), and therefore "read 'any other decision or action' expansively to cover all determinations made in support of a grant of discretionary relief under" Clause (ii). *Id.* at 1200.

The Eighth Circuit also squarely rejected bifurcating "non-discretionary determination[s]" regarding "eligibility criteria" from the "ultimate discretionary decision" subject to Clause (ii). *Fofana*, 163 F.4th at 1138. Declining to adopt the two-step approach and reasoning that the panel adopted here, the Eighth Circuit rejected the argument that Clause (ii) is narrower than Clause (i) because it does not use "the broadening effect of the word 'regarding' that is used in clause (i)," and, citing *Patel*, held that Clause (ii) "is not narrower; it is just phrased differently." *Id.* at 1138–39. Ultimately, that court held that "*Patel* establishes that the unreviewable decision—'any decision,' like 'any judgment'—is not limited to a final discretionary decision but includes the Secretary's decision on all aspects" of the application for relief. *Id.* at 1139.

The Fourth Circuit expressly disagreed that "*Patel*'s broad construction of clause (i) should not equally apply to clause (ii)," noting

that "subclause (ii) acts as a catchall provision of subclause (i)." *Shaiban*, 97 F.4th at 267. There, the Fourth Circuit held that Clause (ii) applied to USCIS's nondiscretionary, predicate decision that ultimately informed USCIS's exercise of discretion. *Id.* And although the Fourth Circuit more recently adopted a narrow exception for "pure legal question[s] of statutory construction," that are "entirely separate" from the discretionary decision, *Ortez v. U.S. Citizenship & Immigr. Servs.*, 169 F.4th 269, 273 (4th Cir. 2026), Appellants here do not challenge an agency interpretation of the INA that is separate from the termination of refugee status. In any event, the panel's outright refusal to apply *Patel* to Clause (ii) is inconsistent with the Fourth Circuit's approach.

The panel's decision stands alone in its wholesale rejection of *Patel* and is diametrically opposed to Fourth, Ninth, and Eighth Circuit precedent.

### III. This Appeal Presents a Recurrent Question of Exceptional Importance.

In addition to the split, en banc review is clearly warranted because this decision involves a question of exceptional importance. Allowing review of intermediate determinations will likely increase

litigation and consequently, increase burdens on the agency and the courts.[2] The panel's decision is not limited to USCIS's decisions to terminate refugee status but reaches all cases involving USCIS's discretionary decisions that subsume nondiscretionary, predicate-eligibility determinations. Such cases number in the hundreds of thousands, and the panel's decision opens the door to a significant volume of litigation for a wide variety of immigration categories. By way of just a few examples, the panel's two-step analysis may impact discretionary adjudications, including, but not limited to, denials of TPS under 8 U.S.C. § 1254a(a)(1), denials of follow-to-join derivative asylee petitioners under § 1158(b)(3)(A), and denials of asylee adjustment under § 1159(b). In Fiscal Years 2023, 2024, and 2025, USCIS denied 80,481 TPS applications; 3,764 applications for follow-to-join petitioners; and 6,770 applications for asylee adjustment. Nearly one million applications for discretionary benefits remain

---

[2] In fact, this Court requested supplemental briefing addressing *Mukantagara*'s impact on *Ahmad v. Noem*, 25-4067 (10th Cir.), where the issue is whether district courts may review challenges to nondiscretionary determinations in a J-1 waiver denial under 8 U.S.C. § 1182(e).

pending with USCIS. These data demonstrate the incredible volume of potential cases that the panel's decision may launch.

Congress did not intend the level of judicial oversight that the panel's decision allows. Section 1252(a)(2)(B) reflects clear Congressional intent to limit "review" of denials of discretionary benefits. *Patel*, 596 U.S. at 346. The harm Congress sought to redress by enacting § 1252(a)(2)(B) and funneling review into the PFR process was the *litigation. See, e.g.*, H.R. Rep. No. 108-724, pt. 6, at 192 (2004) ("The result of [*INS v. St. Cyr*, 533 U.S. 289 (2001)] has been a dramatic increase in the volume of immigration cases filed in the federal courts and continued delay and inefficiency in securing final judgment in immigration matters."); H.R. Rep. No. 109-72, at 174 (2005) (Conf. Rep.) ("All of this has resulted in piecemeal review, uncertainty, a lack of uniformity, and a waste of resources both for the judicial branch and Government lawyers—the very opposite of what Congress tried to accomplish in 1996."). While a "strong presumption" exists "that executive determinations generally are subject to judicial review," *Guerrero-Lasprilla*, 589 U.S. at 229, Congress created an

exemption to this general "presumption" through the judicial-review bar.

En banc review of this important issue is necessary for the reasons explained above.

## CONCLUSION

For the foregoing reasons, this Court should grant en banc rehearing.

DATED this thirteenth day of May, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney
General

KATELYN MASETTA-
ALVAREZ
Senior Litigation Counsel
Civil Division
Office of Immigration Litigation

JOSHUA C. McCROSKEY
Trial Attorney

/s/ *Aneesa Ahmed*
ANEESA AHMED
Trial Attorney
Office of Immigration Litigation
United States Department of
Justice
P.O. Box 878, Ben Franklin
Station
Washington, D.C. 20044
Phone: (202) 451-7744
Email:
Aneesa.Ahmed@usdoj.gov

*Attorneys for Defendants-
Appellees*

# CERTIFICATE OF SERVICE

I certify that on May 13, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Aneesa Ahmed*
ANEESA AHMED
Trial Attorney
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 451-7744
Email: Aneesa.Ahmed@usdoj.gov

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,738 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f) (as provided in Federal Rule of Appellate Procedure 40(d)(2)). The petition has been prepared in a proportionally spaced, 14-point typeface using Microsoft Word for Office processing software.

/s/ *Aneesa Ahmed*
ANEESA AHMED
Trial Attorney
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 451-7744
Email: Aneesa.Ahmed@usdoj.gov