# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

AGNES MUKANTAGARA and EBENEZER SHYAKA,

Plaintiffs-Appellants,

v.

U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; Michael Crabtree, USCIS Field Office Director, Salt Lake City; Eva Rupp, USCIS Acting Field Office Director, Denver; Joseph Edlow, Director, USCIS [1]

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Utah
District Court Case No. 20-cv-00897 (Judge Robert J. Shelby)

## SUPPLEMENTAL BRIEF FOR APPELLEES

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel

JOSHUA C. MCCROSKEY
Trial Attorney

ANEESA AHMED
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 451-7744
Aneesa.Ahmed@us.doj.gov

*Attorneys for Defendants-Appellees*

---

[1]     Eva Rupp and Joseph Edlow are automatically substituted as parties pursuant to Federal Rule of Appellate Procedure 43(c)(2). *See* Fed. R. App. P. 43(c)(2).

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................ 1

ARGUMENT .................................................................................................. 2

I.    *Doe* confirms that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review over subsidiary determinations leading up to USCIS's decision to terminate refugee status. .............................................................................. 2

II.   Judicial review of whether Ms. Mukantagara was a refugee when she was admitted to the United States is available in a court of appeals via a Petition for Review of a removal order. ...................................................... 10

III.  Ms. Mukantagara and Mr. Shyaka would be able to supplement the record on review in a PFR. .............................................................. 14

CONCLUSION .............................................................................................. 25

**TABLE OF AUTHORITIES**

**Cases**

*Amgen, Inc. v. Smith*,
　357 F.3d 103 (D.C. Cir. 2004)................................................................4

*Army Corps of Engineers v. Hawkes Co.*,
　578 U.S. 590 (2016) ........................................................................4, 5

*Bennet v. Spear*,
　520 U.S. 154 (1997) ...........................................................................8

*Cheejati v. Blinken*,
　106 F.4th 388 (5th Cir. 2024)..............................................................7

*Coriolan v. Immigr. & Naturalization Serv.*,
　559 F.2d 993 (5th Cir. 1977).............................................................21

*Davis v. Schnurr*,
　No. 22-3131, 2022 WL 17175571 (10th Cir. Nov. 23, 2022)............................23

*DCH Regional Medical Center v. Azar*,
　925 F.3d 503 (D.C. Cir. 2019).................................................... 4, 5, 9

*Fofana v. Noem*,
　163 F.4th 1135 (8th Cir. 2026)...........................................................6, 7

*Gallo-Alvarez v. Ashcroft*,
　266 F.3d 1123 (9th Cir. 2001) ...................................................... 19, 20

*Geda v. Dir. United States Citizenship & Immigr. Servs.*,
　126 F.4th 835 (3d Cir. Jan. 23, 2025)....................................................7

*Guerrero-Lasprilla v. Barr*,
　589 U.S. 221 (2020) .........................................................................10

*Hadayat v. Gonzales*,
　458 F.3d 659 (7th Cir. 2006)..............................................................17

*Hamilton v. Gonzales*,
485 F.3d 564 (10th Cir. 2007) ................................................................13

*Jimenez-Guzman v. Holder*,
642 F.3d 1294 (10th Cir. 2011) ........................................... 16, 24, 25

*Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*,
131 F.4th 1302 (11th Cir. 2025) ............................................................7

*Khalil v. President, United States*,
164 F.4th 259 (3d Cir. 2026) ............................................... 19, 20

*Kucana v. Holder*,
558 U.S. 233 (2010) ...............................................................................6

*Mahdawi v. Trump*,
No. 25-1113, 2026 WL 2090981 (2d Cir. July 21, 2026) ........................ 19, 20

*Martinez-Garcia v. Holder*,
312 F. App'x 707 (5th Cir. 2009) ........................................................16

*Matter of Benitez*,
19 I. & N. Dec. 173 (BIA 1984) ..........................................................16

*Matter of Figueroa*,
25 I&N Dec. 596 (BIA 2011)...............................................................15

*Matter of Henriquez Rivera*,
25 I. & N. Dec. 575 (BIA 2011)...........................................................16

*Matter of M-P-*,
20 I. & N. Dec. 786 (BIA 1994)...........................................................18

*Matter of S-H-*,
23 I. & N. Dec. 462 (BIA 2002)...........................................................18

*Matter of W-Y-C- & H-O-B-*,
27 I. & N. Dec. 189 (BIA 2018)...........................................................16

*Matumona v. Barr*,
945 F.3d 1294 (10th Cir. 2019) ...............................................................16

*Mauting v. I.N.S.*,
16 F. App'x 788 (9th Cir. 2001) ......................................................... 17, 19

*Mukantagara v. Noem*,
164 F.4th 765 (10th Cir. 2026) .................................................................1

*Mukantagara v. U.S. Dep't of Homeland Sec.*,
67 F.4th 1113 (10th Cir. 2023) ................................................................9

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ............................................................... passim

*Musau v. Carlson*,
499 F. App'x 837 (10th Cir. 2012) ........................................................19

*Patel v. Garland*,
596 U.S. 328 (2022) .................................................................................6

*Perales-Cumpean v. Gonzales*,
429 F.3d 977 (10th Cir. 2005) ...............................................................11

*Qureshi v. Holder*,
663 F.3d 778 (5th Cir. 2011) ...................................................................8

*Rafaelano v. Wilson*,
471 F.3d 1091 (9th Cir. 2006) ...............................................................23

*Reno v. Am.–Arab Anti–Discrimination Comm.*,
525 U.S. 471 (1999) ...............................................................................18

*Rivera v. I.N.S.*,
913 F.2d 1443 (9th Cir. 1990) ...............................................................16

*Sewak v. INS*,
900 F.2d 667 (3d Cir. 1990) ...................................................................17

*Shin v. Mukasey*,
547 F.3d 1019 (9th Cir.2008) ...................................................................24

*U.S., Inc. v. Renaud,*
5 F.4th 59 (D.C. Cir. 2021) ......................................................................6

*United States v. Gonzales*,
520 U.S. 1 (1997) ............................................................... 5, 24

*Wilkinson v. Garland,*
601 U.S. 209 (2024) ............................................... 10, 11, 12, 13

**<u>Statutes</u>**

5 U.S.C. § 701 ...................................................................................1

5 U.S.C. § 704 ...................................................................................5

8 U.S.C. §1229a(b)(l)...........................................................................15

8 U.S.C. § 1157(c)(4)..........................................................................1, 2

8 U.S.C. § 1229a(c)(1)(A) .....................................................................14

8 U.S.C. § 1229a(b)(1)..........................................................................14

8 U.S.C. § 1229a(c)(3)(A) .....................................................................16

8 U.S.C. § 1229b ...................................................................................11

8 U.S.C. § 1229b(b)(1)(A) .....................................................................11

8 U.S.C. § 1252 ...................................................................................14

8 U.S.C. § 1252(a)(1)............................................................................19

8 U.S.C. § 1252(a)(2)(B)(ii) ...................................................................1

8 U.S.C. § 1252(a)(2)(D) ................................................................ 10, 13

8 U.S.C. § 1252(a)(5)............................................................................9

8 U.S.C. § 1252(b)(4)(A) .......................................................... 14, 18, 21, 23

8 U.S.C. § 1252(b)(9)............................................................................9

8 U.S.C. § 1254a(b)(3)(B) ....................................................................3

8 U.S.C. § 1254a(b)(5)(A) ....................................................................3

8 U.S.C. § 1255(a) ..............................................................................7

28 U.S.C. § 2341................................................................................19

28 U.S.C. § 2347(b)(3).................................................................. passim

## Rules

Fed. R. App. P. 43(c)(2).......................................................................1

Fed. R. App. P. 48............................................................................14

Fed. R. App. P. 48(a) .........................................................................23

Fed. R. Evid. 201 .............................................................................14

Fed. R. Evid. 201(b)..........................................................................21

## Regulations

8 C.F.R. § 207.9 ........................................................... 19, 20, 21

8 C.F.R. § 1003.10 ............................................................................15

8 C.F.R. § 1003.1(d)(3)(iv)..................................................................18

8 C.F.R. § 1003.35 ............................................................................15

8 C.F.R. § 1003.36 ............................................................................15

8 C.F.R. § 1240.1(a)(1)(iv) ........................................................................15

8 C.F.R. § 1240.1(c) ..................................................................................15

8 C.F.R. § 1240.9 ......................................................................................15

8 C.F.R. § 1240.10 ....................................................................................15

8 C.F.R. § 1240.10(a)(4) ...........................................................................15

8 C.F.R. § 1240.1(c) ..................................................................................15

8 C.F.R. § 1240.10(c) ................................................................................24

8 C.F.R. § 1240.8(d) .................................................................................16

8 C.F.R. § 1003.10 ....................................................................................15

# GLOSSARY

| | |
|---|---|
| Administrative Procedure Act | APA |
| Board of Immigration Appeals | BIA |
| Immigration and Nationality Act | INA |
| Petition for Review | PFR |
| U.S. Citizenship and Immigration Services | USCIS |
| U.S. Department of Homeland Security | DHS |

On July 14, 2026, this Court ordered panel rehearing and ordered Appellees to provide supplemental briefing to address the following questions:

> (1) whether the Supreme Court's recent decision in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), calls into question this Court's holding in *Mukantagara v. Noem*, 164 F.4th 765 (10th Cir. 2026), *reh'g granted and opinion vacated sub nom. Mukantagara v. Mullin*, No. 24-4071, 2026 WL 2024900 (10th Cir. July 14, 2026), that 8 U.S.C. § 1252(a)(2)(B)(ii) allows for judicial review over U.S. Citizenship and Immigration Services' ("USCIS") subsidiary determinations made under 8 U.S.C. § 1157(c)(4);
>
> (2) whether USCIS's finding that Ms. Mukantagara was not a refugee at the time of her admission is judicially reviewable; and
>
> (3) whether Ms. Mukantagara and Mr. Shyaka could supplement the record filed with a Petition for Review ("PFR") to include USCIS's termination decision.

Order, Doc. 71 at 2.

*First*, *Doe* held that in a case arising under the Administrative Procedure Act ("APA") case, 5 U.S.C. § 701, *et seq*., under generally applicable administrative-law principles, "[i]f the final agency action is unreviewable, then so too are subsidiary determinations." 146 S. Ct. at 2136. That holding confirms that 8 U.S.C. § 1252(a)(2)(B)(ii) shields USCIS's termination decision, including the subsidiary determination that Ms. Mukantagara was not a refugee when she was admitted to the United States, from judicial review by the District Court. *Second*, judicial review of USCIS's termination decision is available as to legal questions and mixed questions of fact and law, but only in a court of appeals through a PFR. *Third*, Ms.

Mukantagara and Mr. Shyaka could request to supplement the record on appeal in their respective PFRs through various mechanisms, but the government reserves its objections to Mr. Shyaka's supplementing the record in his PFR based on his concession of removability.

The District Court thus correctly concluded that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review over USCIS's decision made pursuant to 8 U.S.C. § 1157(c)(4) to terminate the refugee status of Ms. Mukantagara, and Mr. Shyaka as her derivative beneficiary, on the grounds that Ms. Mukantagara was not a refugee at the time of her admission into the United States. USCIS terminated Ms. Mukantagara's refugee status because, instead of suffering past persecution during the Rwandan Genocide as she claimed, substantial evidence gathered through an eight-year investigation showed that Ms. Mukantagara had instead been a participant in the Rwandan Genocide. This Court should affirm the District Court's dismissal of Appellants' claims.

## ARGUMENT

I.  ***Doe* confirms that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review over subsidiary determinations leading up to USCIS's decision to terminate refugee status.**

The Supreme Court's reasoning in *Doe* reinforces the conclusion that the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review of

USCIS's determination that Ms. Mukantagara was not a refugee at the time of her admission.

A.    The issue in *Doe* was whether another jurisdictional bar in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1254a(b)(5)(A), applied not only to the ultimate determination to terminate a temporary protected status ("TPS") designation, but also to the decisions leading to that determination. The statutory scheme at issue in *Doe* provides that the Secretary of Homeland Security "shall terminate" a TPS designation if, after consultation with the appropriate agencies, the Secretary "determines" that the relevant country "no longer continues to meet the conditions for designation." 8 U.S.C. § 1254a(b)(3)(B). Congress, however, precluded courts from exercising jurisdiction to review "any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A). The lower courts held that § 1254a(b)(5)(A) did not bar judicial review of the Secretary's compliance with the TPS statute's procedural requirements, such as engaging in inter-agency consultation, and the Secretary's factual findings regarding country conditions. *Doe*, 146 S. Ct. at 2132–33.

The Supreme Court reversed, finding that § 1254a(b)(5)(A) stripped the lower courts of jurisdiction to review the Secretary's consultation decisions and country-conditions assessment because they were "part of the process that led to [the

3

Secretary's] final decision to terminate these countries' TPS designations." *Id.* at 2134. The Court rejected the argument that only the Secretary's "ultimate 'determination'—not any subsidiary decision, such as whether to consult other agencies—is unreviewable." *Id.* at 2136. The Court's decision addressed both the particular language used in § 1254a(b)(5)(A) and generally applicable legal principles. As to the former, it noted that the word "determination" is commonly used "to describe the chain of events leading up to a decision," not just the ultimate decision. *Id.* at 2133. Even if "'determination'" in the statute "referred only to that final decision," the Court explained, "all the preceding decisions would be 'with respect to' that decision" and thus covered by the preclusion provision. *Id.* at 2134 (quoting § 1254a(b)(5)(A)).

The *Doe* Court further concluded that interpreting § 1254a(b)(5)(A) as limited to the "ultimate 'determination'" and not "subsidiary decision[s]" would separately "contradict[] general administrative-law principles." 146 S. Ct. at 2136. It explained that, in APA cases, an agency's "subsidiary decisions merge into the final agency action, which is then subject to review." *Id.* (citing *Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597–98 (2016)). Consequently, the Court confirmed that "if the final agency action is unreviewable, then so too are subsidiary determinations." *Id.* (citing *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) and *DCH Regional Medical Center v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019)).

4

"This important principle ensures that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering." *Id.*

The Supreme Court's conclusion is in line with basic tenets of administrative law. Under the APA, a plaintiff may only challenge a "final agency action." 5 U.S.C. § 704. Agency actions that are "preliminary, procedural, or intermediate" are subject to judicial review only on "review of the final agency action." 5 U.S.C. § 704. Thus, a court may only review such intermediate decision-making steps in a challenge to the agency's final decision; the intermediate decisions are not standalone claims. *See Hawkes*, 578 U.S. at 597. If another statute precludes APA review of the final decision, it likewise precludes review of the subsidiary determinations supporting that final decision. *See Doe*, 146 S. Ct. at 2136.

B.    *Doe* strongly supports the District Court's application of 8 U.S.C. § 1252(a)(2)(B)(ii) in this case.

1.    Even though § 1252(a)(2)(B)(ii) contains different wording than the preclusion provision at issue in *Doe*, § 1254a(b)(5)(A), it uses similarly broad preclusive language. The statute deprives district courts of jurisdiction over "*any . . . decision or action*" the authority for which is specified to be in Department of Homeland Security's ("DHS") discretion in the relevant subchapter of Title 8. § 1252(a)(2)(B)(ii) (emphasis added); *see United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or

some indiscriminately of whatever kind.'"). The language of § 1252(a)(2)(B)(ii), "any other decision or action," is most naturally read to mean decisions of *whatever* kind and actions of *whatever* kind—"not just the last-in-time" decision. *See Patel v. Garland*, 596 U.S. 328, 338 (2022) ("Here, 'any' means that the provision applies to judgments 'of whatever kind' under § 1255, not just discretionary judgments or the last-in-time judgment"); *see also iTech U.S., Inc. v. Renaud,* 5 F.4th 59, 65 (D.C. Cir. 2021) (reading "any other decision or action" broadly); *Fofana v. Noem*, 163 F.4th 1135, 1139 (8th Cir. 2026) (explaining that "any other decision or action" in § 1252(a)(2)(B)(ii) means "decisions 'of whatever kind'—not just discretionary decisions or last-in-time decisions."), *pet. for cert. filed*, No. 25-1154 (U.S. Apr. 7, 2026). Like the TPS bar in § 1254a(b)(5)(A), which precludes review of "any determination" regarding a TPS designation, the broad sweep of the "any other decision or action" language in § 1252(a)(2)(B)(ii) reaches beyond the ultimate decision and strips jurisdiction to review the process and subsidiary decisions leading to the final agency action. *See Doe*, 146 S. Ct. at 2134, 2136. The same is true of § 1252(a)(2)(B)(i), the clause preceding § 1252(a)(2)(B)(ii), as the Supreme Court held in *Patel*. 596 U.S. at 347. And because clause (ii) is a "catchall" for decisions of "the same genre" covered by clause (i), *Kucana v. Holder*, 558 U.S. 233, 246 (2010), it would be extremely odd if the two clauses had fundamentally

different scopes. "Clause (ii) is not narrower [than clause (i)]; it is just phrased differently." *Fofana*, 163 F.4th at 1139.

Further, the substantive statutory provision at issue in this case indicates that the actions and procedures leading up to DHS's decision to terminate refugee status are also within DHS's discretion. Section 1157(c)(4) grants DHS the discretion to terminate refugee status "pursuant to such regulations as the Attorney General *may* prescribe. . . ." (emphasis added). Reviewing the same language—"pursuant to such regulations as [the Attorney General] may prescribe" in 8 U.S.C. § 1255(a)—other circuit courts have concluded that § 1252(a)(2)(B)(ii) precludes review of the "actions taken in the course of the decision-making process." *Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307-08 (11th Cir. 2025); *Geda v. Dir. United States Citizenship & Immigr. Servs.*, 126 F.4th 835, 843 (3d Cir. Jan. 23, 2025) (same); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) (same). Thus, because the refugee-termination provision at issue here, § 1157(c)(4), specifies that the process for terminating refugee status is within the agency's discretion, the District Court lacked jurisdiction to review USCIS's decision-making process, including its notice and interview procedures.

2.      *Doe*'s application of "general administrative law principles" independently confirms that § 1252(a)(2)(B)(ii) applies here. Two conditions must be satisfied for agency action to be "final" under the APA: "[f]irst, the action must

mark the consummation of the agency's decisionmaking process . . . [a]nd second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997). Again, *Doe* explains that in APA cases, "[i]f the final agency action is unreviewable, then so too are subsidiary determinations" leading up to the final decision. 146 S. Ct. at 2136. In their complaint, Appellants assert that the relevant final agency action in this APA case is USCIS's decision to terminate Ms. Mukantagara's refugee status. USCIS's decision was two-fold: first, it determined that Ms. Mukantagara was not in fact a refugee at the time of admission and then, after making that determination, it exercised its discretion to terminate her refugee status. The decision that Ms. Mukantagara did not meet the definition of a refugee, however, was not the consummation of USCIS's decision-making process, nor the decision by which Ms. Mukantagara's status was determined or from which immigration consequences flowed. Rather, the final agency action Appellants challenge is USCIS's discretionary determination to terminate her refugee status.[2]

---

[2]  The government's position is that the termination decision here will not become "final" unless and until Ms. Mukantagara's removal order becomes final. *See Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (concluding that USCIS's termination of asylum status was not a final agency action, because further administrative relief via removal proceedings is available). In other words, because Ms. Mukantagara's immigration status is in flux until her removal proceedings conclude, USCIS's termination decision was an intermediate step in a multi-stage administrative process. *Id.* Ms. Mukantagara and Mr. Shyaka, on the other hand,

*Continued on next page.*

For the reasons set forth in *Doe*, USCIS's predicate determination as to refugee status "merge[s] into" its ultimate termination decision. 146 S. Ct. at 2136. Because § 1252(a)(2)(B)(ii) bars review of that discretionary action, review of the decisionmaking leading up to that decision is also barred. *See id.*; *see also DCH Reg'l Med. Ctr.*, 925 F.3d at 505–06 (holding that a judicial-review bar on "'[a]ny estimate of the [HHS] Secretary'" used for certain purposes also precludes review of statutory claims challenging "the *methodology* used to make the estimates.").

Any other approach would effectively neuter § 1252(a)(2)(B)(ii), enabling its circumvention "by creative pleading or clever lawyering." *Doe*, 146 S. Ct. at 2136. Because discretionary decisions under the relevant provisions of the INA are routinely the product of numerous subsidiary legal, factual, and procedural determinations and actions, plaintiffs could bring all manner of challenges to discretionary decisions as long as they confined their claims to the "non-discretionary" constituent elements of those decisions. The "general administrative-

---

contend that the termination decision by itself is a final agency action for the purpose of APA review. App. Vol. I, 039. If USCIS is correct that the termination decision is only an intermediate step and the final agency action is the final order of removal, USCIS's termination decision is only reviewable by a court of appeals through a PFR. 8 U.S.C. § 1252(a)(5), (b)(9). Because this Court previously rejected the government's argument that 8 U.S.C. § 1252(b)(9) barred review of USCIS's termination decision, *see Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023), and because the question of final agency action is not before this Court, this brief assumes that the final agency action is the termination decision itself, as Appellants allege in their complaint. *See* App. Vol. I, 039.

law principles" applied in *Doe*, *id.*, prevent APA plaintiffs from evading statutory limitations on judicial review like § 1252(a)(2)(B)(ii) in that manner. The District Court therefore correctly dismissed this case for lack of jurisdiction.

**II.     Judicial review of whether Ms. Mukantagara was a refugee when she was admitted to the United States is available in a court of appeals via a Petition for Review of a removal order.**

Whether Ms. Mukantagara met the definition of "refugee" when she was admitted to the United States is a "quintessential" mixed question of law and fact that is reviewable only in a PFR and only because 8 U.S.C. § 1252(a)(2)(D) restores jurisdiction in the PFR context that is otherwise precluded by § 1252(a)(2)(B)(ii). *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). Section 1252(a)(2)(D) states that "[n]othing in [§ 1252(a)(2)(B) or (C)] . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review . . . ." § 1252(a)(2)(D). The addition of § 1252(a)(2)(D) demonstrates Congress's recognition that subparagraph (B) would preclude review over denials of many immigration benefits, including denials that turn on questions of law. But Congress restored such review in § 1252(a)(2)(D) in a PFR, when the alien is actually in jeopardy of removal. Further, in *Guerrero-Lasprilla v. Barr*, the Supreme Court explicitly held that the phrase "questions of law" in § 1252(a)(2)(D) includes the "the application of a legal standard to undisputed or established facts." 589 U.S. 221,

225 (2020). Thus, § 1252(a)(2)(D) also preserves mixed questions of law and fact for review in a PFR.

More recently, in *Wilkinson*, the Supreme Court concluded that an immigration judge's "hardship determination is reviewable under § 1252(a)(2)(D), which gives Courts of Appeals jurisdiction to review 'questions of law.'" 601 U.S. at 211–12. In *Wilkinson*, the petitioner applied for cancellation of his removal pursuant to 8 U.S.C. § 1229b, which allows an immigration judge to cancel the removal of an alien who establishes that he meets certain statutory criteria, including that his removal would result in "exceptional and extremely unusual hardship" to his U.S. citizen spouse, parent, or child. 8 U.S.C. § 1229b. The "hardship" determination consists of two steps: first, the alien must show that he meets four statutory requirements enumerated in 8 U.S.C. § 1229b(b)(1)(A)–(D), and second, the immigration judge decides whether to exercise discretion to cancel the order of removal in that particular case. 8 U.S.C. § 1229b; *Wilkinson*, 601 U.S. at 212–13. To meet the "extreme hardship" standard as interpreted by Board of Immigration Appeals ("BIA") precedent,[3] Wilkinson needed to show that his U.S. citizen son, who Wilkinson contended suffered from a serious medical condition and relied on

---

[3] The creation of a legal framework by the BIA was the additive that converted the statutorily undefined "extreme hardship" language into a mixed question. When no such binding interpretation exists, the agency's application of malleable statutory criteria may still be essentially a discretionary judgment call. *See, e.g.*, *Perales-Cumpean v. Gonzales*, 429 F.3d 977, 982 (10th Cir. 2005).

Wilkinson for emotional and financial support, "would suffer hardship that is substantially different from or beyond that which would ordinarily be expected to result from [his] removal, but need not show that such hardship would be 'unconscionable.'" *Wilkinson*, 601 U.S. at 209, 214–15. The immigration judge denied Wilkinson's application. *Id.* at 215–16. Upon appeal of that decision in a PFR, the Third Circuit held that it lacked jurisdiction to review the immigration judge's decision pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), which precludes review over any "judgment[s] regarding the granting of [discretionary] relief" under § 1229b's cancellation of removal provision." *Id.* at 209–10 (quoting 8 U.S.C. § 1252(a)(2)(B)(i)).

The Supreme Court reversed, agreeing that § 1252(a)(2)(B)(i) did indeed apply, *id.* at 218, 221, but ultimately concluding that application of the "hardship" standard was a mixed question of law and fact for which § 1252(a)(2)(D) *restored,* on a PFR, the jurisdiction stripped by § 1252(a)(2)(B)(i). The Court, interpreting § 1252(a)(2)(D), explained that while the case "concededly requires a close examination of the facts," a "mixed question that requires close engagement with the facts is still a mixed question," and therefore a "question[] of law" reviewable under § 1252(a)(2)(D). *Id.* at 222; *see id.* ("That a mixed question requires a court to immerse itself in facts does not transform the question into one of fact. It simply suggests a more deferential standard of review."). But the immigration judge's

underlying factual determination that Wilkinson was credible or that his minor son had a serious medical condition would still constitute unreviewable factual questions for which § 1252(a)(2)(D) did not restore jurisdiction. *Id.* Therefore, even though § 1252(a)(2)(B) strips jurisdiction, § 1252(a)(2)(D) "restores jurisdiction to review 'constitutional claims or questions of law.'" *Id.* at 218. Necessarily, the Supreme Court had to first conclude that § 1252(a)(2)(B) stripped jurisdiction to then decide whether § 1252(a)(2)(D) restored the jurisdiction stripped by § 1252(a)(2)(B). If anything, *Wilkinson*'s reliance on § 1252(a)(2)(D) as a jurisdictional basis emphasizes just how broadly § 1252(a)(2)(B) sweeps when § 1252(a)(2)(D) does *not* apply. Importantly, § 1252(a)(2)(D) operates only in the *removal* context where an alien petitions for review in a court of appeals. 8 U.S.C. § 1252(a)(2)(D); *see also Hamilton v. Gonzales*, 485 F.3d 564, 568 (10th Cir. 2007) ("[Section] 1252(a)(2)(D) allows judicial review over constitutional and legal challenges only when raised on appeal of a final order of removal.").

Thus, judicial review over USCIS's legal conclusions that Ms. Mukantagara was not a "refugee" at the time of her admission, as well as any constitutional challenges to USCIS's determination, is available through a PFR pursuant to 8 U.S.C. § 1252(a)(2)(D).

**III. Ms. Mukantagara and Mr. Shyaka would be able to supplement the record on review in a PFR.**

Ms. Mukantagara would be able to supplement the record upon review in a PFR. Generally, an immigration judge develops the record during immigration proceedings, which will eventually be available for further review in a PFR under 8 U.S.C. § 1252. From there, the appropriate court of appeals can rule on the issue if the record is sufficiently developed. Generally, the court of appeals' review is limited to the record developed before the agency. *See* 8 U.S.C. § 1252(b)(4)(A), but if the court of appeals determines that the record is insufficient regarding constitutional claims or challenges that Ms. Mukantagara or Mr. Shyaka raise relating to USCIS's termination decision, the court of appeals may invoke other procedures relating to developing the facts in cases in the appellate courts. *See* 28 U.S.C. § 2347(b)(3); Fed. R. Evid. 201; Fed. R. App. P. 48.

    A.    <u>Mr. Shyaka and Ms. Mukantagara should have developed the record before the immigration court.</u>

By statute, Congress requires immigration judges to receive evidence and interrogate, examine, and cross-examine witnesses. 8 U.S.C. § 1229a(b)(1). Through this process, an immigration judge determines whether "an alien is removable from the United States." 8 U.S.C. § 1229a(c)(1)(A). An immigration judge conducting removal proceedings has the authority to create and control the record of proceedings, receive and consider material and relevant evidence, question the alien

and any other witnesses, issue subpoenas for the attendance of witnesses and the presentation of evidence, and generally take any action consistent with applicable law and regulations as may be appropriate. *See* 8 U.S.C. §1229a(b)(l); 8 C.F.R. §§ 1003.10 (enumerating immigration judges' duties), 1003.35 (explaining that immigration judges may order depositions and issue subpoenas), 1003.36 (explaining that the immigration court "shall create and control" the record of proceedings), 1240.1(a)(1)(iv) (explaining the authority of immigration judges), 1240.1(c) (explaining the conduct of hearings), 1240.9 (describing the contents of the record created during immigration proceedings). During the removal process, the alien has an opportunity to "examine and object to the evidence against him or her" and the responsibility "to present evidence in his or her own behalf and to cross-examine witnesses presented by the government." *Id.* § 1240.10.

Immigration judges retain broad discretion over what evidence they admit and consider. *Matter of Figueroa*, 25 I&N Dec. 596, 598–99 (BIA 2011); *see* 8 C.F.R. § 1240.10(a)(4) (requiring immigration judge to notify the respondent that she can "present evidence in . . . her behalf"); *id.* § 1240.11(c)(3)(ii) (noting immigration judge's authority "to properly control the scope of any evidentiary hearing"). In developing the record, the immigration judge must consider "material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing." 8 C.F.R. § 1240.1(c). Thus, immigration judges are fully empowered to consider all

15

evidence needed to determine whether the government has met its burden to demonstrate removability by clear and convincing evidence. *See* 8 U.S.C. § 1229a(c)(3)(A) (establishing that DHS bears the "burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable"); *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1298 (10th Cir. 2011) (acknowledging that the government must bear the burden to prove removability by clear and convincing evidence).

Both parties bear the burden of developing a proper record. *See Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 190 (BIA 2018) ("It is . . . imperative that the parties fully develop the record before the Immigration Judge."). An alien and her counsel may request to develop the factual record, although the immigration judge will ultimately determine whether to grant such a request. *See*, *e.g.*, *Bazarra Rivera v. I.N.S.*, 913 F.2d 1443, 1447 (9th Cir. 1990); *Martinez-Garcia v. Holder*, 312 F. App'x 707, 708 (5th Cir. 2009); *Matter of Henriquez Rivera*, 25 I. & N. Dec. 575, 579 (BIA 2011); *Matter of Benitez*, 19 I. & N. Dec. 173 (BIA 1984).[4]

The corollary is that the alien is obligated to build a record to preserve any issues that may warrant further review. *See* 8 C.F.R. § 1240.8(d) (explaining that the

---

[4]     When the alien is *pro se*, the immigration judge plays a larger role in developing the record. *See*, *e.g., Matumona v. Barr*, 945 F.3d 1294, 1303–04 (10th Cir. 2019) ("an [immigration judge] has an affirmative duty to develop the record when the applicant is not represented.").

alien bears the burden of proof to demonstrate eligibility for immigration benefits and show that any grounds for mandatory denial of immigration benefits do not apply). If the alien raises a claim that the immigration judge or the BIA is powerless to address, the court of appeals can address that issue in the first instance, within the bounds of other statutory limitations. For instance, if an alien in removal proceedings raises a constitutional claim that neither the immigration judge nor the BIA can address, the court of appeals may nonetheless address that question in the first instance on the record developed in immigration proceedings. *See, e.g.*, *Sewak v. INS*, 900 F.2d 667, 670 (3d Cir. 1990); *Hadayat v. Gonzales*, 458 F.3d 659, 665 (7th Cir. 2006). Thus, an alien should raise constitutional claims and build a factual record to preserve such an issue for review. For example, in *Mauting v. I.N.S.*, the Ninth Circuit considered a claim of equitable estoppel, which neither the immigration judge nor the BIA had the authority to consider. 16 F. App'x 788, 790 (9th Cir. 2001). The Ninth Circuit decided to investigate the merits of the petitioners' claim after concluding that they had "alleged and preserved a colorable claim of equitable estoppel." *Id*. at 791. The requirements to develop and fully evaluate the entirety of the record applies to alleged constitutional violations, as well.

Given this broad discretion and in light of these administrative decisions, an immigration judge may consider and develop a factual record for a legal issue not properly before him or her. As the BIA has repeatedly recognized, an immigration

17

judge must fully explain the reasons for a decision to allow the parties a fair opportunity to contest the decision and provide the BIA with an opportunity for meaningful appellate review. *Matter of M-P-*, 20 I. & N. Dec. 786, 787–88 (BIA 1994); *see Matter of S-H-,* 23 I. & N. Dec. 462, 465 (BIA 2002) (emphasizing the need for immigration judges to include in their decisions "clear and complete findings of fact that are supported by the record and in compliance with controlling law"). These principles are notable because the BIA, except for taking administrative notice of commonly known facts, does "not engage in factfinding in the course of deciding cases." 8 C.F.R. § 1003.1(d)(3)(iv); *see Matter of S-H-*, 23 I. & N. Dec. at 465. And the court of appeals' review of a PFR is generally limited to the record before the agency. 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.").

B.  Additional factfinding is available if the court of appeals finds that the record on appeal in a PFR is insufficient.

The INA does not preclude a court of appeals reviewing a PFR from obtaining additional factfinding if it determines that the agency record is inadequate. If, in a rare case, the record is insufficient to allow the court of appeals to consider a particular claim, the court of appeals may "transfer the proceedings to a district court" for limited factfinding if the alien can establish that a hearing is required on that issue. 28 U.S.C. § 2347(b)(3); *see Reno v. Am.–Arab Anti–Discrimination*

18

*Comm.*, 525 U.S. 471, 496–97 & n. 2 (1999) (Ginsburg, J., concurring); *Mauting*, 16 F. App'x at 789 (finding that the record on evaluating an estoppel claim insufficient and transferring the case to the district court for consideration); *Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1129–30 (9th Cir. 2001) (finding that the record contained factual contradictions amounting to "crucial evidentiary issues" and transferring the case to the district court for completion of the record); *see also Musau v. Carlson*, 499 F. App'x 837, 849 (10th Cir. 2012) (O'Brien, J., dissenting) (collecting cases).

The INA directs that judicial review of final orders of removal are governed by the Hobbs Act, 28 U.S.C. § 2341, *et seq.,* with the exception of § 2347(c) and certain other limitations. *See* 8 U.S.C. § 1252(a)(1). The Hobbs Act allows a court of appeals considering a PFR to transfer a case to a district court for a hearing to conduct factfinding if: (1) the agency has not held a hearing before taking the challenged action, (2) the agency need not do so by law, and (3) there are genuine issues of material fact to be resolved. 28 U.S.C. § 2347(b)(3); *see also Khalil v. President, United States*, 164 F.4th 259, 280 (3d Cir. 2026); *Mahdawi v. Trump*, No. 25-1113, 2026 WL 2090981, at *13, n.17 (2d Cir. July 21, 2026). Pursuant to 8 C.F.R. § 207.9, which sets forth USCIS's requirements to terminate refugee status, when USCIS determines that an alien was not a "refugee" at the time of admission, the agency must "notify the alien in writing of its intent to terminate the alien's refugee status." 8 C.F.R. § 207.9. USCIS affords the alien with 30 days from the

date the notice is served upon her to present written or oral evidence to rebut USCIS's stated reasons for terminating the alien's refugee status. *Id*. Once USCIS reviews the alien's rebuttal evidence, it decides whether to terminate status and commence removal proceedings. *Id.* The regulation does not require a hearing. *Id.* Here, USCIS was not obligated to hold a hearing before terminating Ms. Mukantagara's refugee status and did not do so. Therefore, while Appellees maintain that sufficient evidence already exists in the record that supports USCIS's termination decision, if, upon review of a PFR, the court of appeals believes that further factual development is required to address claims that neither the immigration judge nor the BIA were able to address, that court may transfer the case to the district court for additional factfinding. *Gallo-Alvarez*, 266 F.3d at 1129–30 ("Because genuine issues of material fact remain, we transfer the consolidated cases to the district court pursuant to 28 U.S.C. § 2347(b)(3) . . . ."). Thus, "a PFR court has the tools to supplement the factual record if needed." *Khalil*, 164 F.4th at 281; *Mahdawi*, 2026 WL 2090981, at *13; *see also Khalil*, 164 F.4th at 280–81 (explaining that in light of the Hobbs Act, "PFR court can meaningfully review Khalil's claims. That remains the case even if, as Khalil argues, immigration judges and the BIA cannot pass on constitutional questions.").

However, such a transfer is only available in extremely narrow circumstances, such as the ones present in this case: because Ms. Mukantagara's and Mr. Shyaka's

claims arising out of USCIS's termination decision are not reviewable by the immigration judge or the BIA by regulation, 8 C.F.R. § 207.9, they have not yet had those claims reviewed by any arbiter. Conversely, if a petitioner has received a hearing on an issue, then the Hobbs Act would not be an avenue to expand the record on review in a PFR. Thus, if the circumstances call for it, the court of appeals "can transfer the proceeding to the district court for a hearing and determination of genuine issues of fact." *Coriolan v. Immigr. & Naturalization Serv.*, 559 F.2d 993, 1003 (5th Cir. 1977).

C.  Judicial notice is available to supplement the record.

A PFR petitioner may also seek to supplement the record by moving the court of appeals to take judicial notice of administrative documents she believes should be included in the PFR record. Ordinarily, the court of appeals' review is limited to the record before the agency. 8 U.S.C. § 1252(b)(4)(A). However, Rule 201 of the Federal Rules of Evidence allows a court to take judicial notice of "adjudicative facts" that are "not subject to reasonable dispute" and that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Ms. Mukantagara and Mr. Shyaka may thus also be able to supplement the record on appeal if they can demonstrate that the materials they wish to include are judicially noticeable.

21

However, the need for taking judicial notice is doubtful in this case. As a practical matter, in this case, Ms. Mukantagara has had the opportunity to develop the record pertaining to her refugee status and her claims for asylum during the ongoing immigration proceedings. In fact, the parties have extensively developed the record in Ms. Mukantagara's immigration proceedings. The record consists of hundreds of pages of evidence submitted by both DHS and Ms. Mukantagara. It includes, but is not limited to: USCIS's written termination decisions of Ms. Mukantagara's and Mr. Shyaka's refugee status; information pertaining to the Gacaca Court, which was established to try suspected participants of the Rwandan Genocide; news articles; a recorded interview with Ms. Mukantagara; an affidavit from Ms. Mukantagara; reports from investigations in Rwanda pertaining to Ms. Mukantagara's participation in the Genocide; and transcripts of witnesses' testimonies, including that of the agent from U.S. Immigration and Customs Enforcement's Homeland Security Investigations who participated in the investigation in Rwanda. *See* Aplt. App. Vol. I, 153–54 (listing evidence and witnesses presented in immigration proceedings). Upon review of the PFR record, the court of appeals may well decide that the record includes sufficient evidence to demonstrate Ms. Mukantagara's removability.

D.   A court of appeals may appoint a special master.

Additionally, Federal Rule of Appellate Procedure 48(a) informs that "[a] court of appeals may appoint a special master to hold hearings, if necessary, and to recommend factual findings and disposition in matters ancillary to proceedings in the court." Fed. R. App. P. 48(a). *Davis v. Schnurr*, No. 22-3131, 2022 WL 17175571, at *2, n.1 (10th Cir. Nov. 23, 2022) (explaining Rule 48(a); *see Rafaelano v. Wilson*, 471 F.3d 1091, 1099 (9th Cir. 2006) (Rawlinson, J., dissenting) (stating that where the BIA never issued a decision, and thus, had no occasion to develop the factual record on alien's claim, the court of appeals should have appointed a special master instead of remanding the case back to the agency). To the extent that a court of appeals believes that additional facts are necessary in order to review Ms. Mukantagara's claims in a PFR, that court could appoint a special master.

E.   While Mr. Shyaka may request supplementation or additional factfinding, the government maintains that such supplementation would be inappropriate because Mr. Shyaka conceded removability.

In its Order for supplemental briefing, this Court noted the seemingly contradictory stances on supplementation of the record taken in the instant case and in Mr. Shyaka's PFR. *See* Doc. 71 at 2. As noted above, a court of appeals decides a PFR only on the administrative record on which the removal order is based. 8 U.S.C. § 1252(b)(4)(A). Mr. Shyaka has sought to supplement the record in his PFR with materials not before the immigration judge or the BIA and provided no

23

explanation for why he did not seek to obtain the additional documents during his immigration proceedings. *Shyaka v. Blanche*, No. 21-9583, Dkt. No. 26, Respondent's Opposition to Petitioner's Motion to Supplement the Record and Respondent's Motion to Abate Proceedings ("Respondent's Opp.") at 2–3. Therefore, the government argued in that case that Mr. Shyaka cannot, as a general matter of administrative law principles, supplement the record. *Id.*at 2. Mr. Shyaka also conceded his removability, and by doing so, he failed to exhaust any challenge to USCIS's termination decision. *Id.* at 3.

Moreover, although Mr. Shyaka has avenues to request supplementation, *see supra* Argument § III.B–D, supplementing the record or ordering additional factfinding would be futile because Mr. Shyaka conceded his removability in his immigration proceedings. Respondent's Opp. at 3–4. While DHS bears the initial burden to prove removability by clear and convincing evidence, "when an alien concedes removability, 'the government's burden in this regard is satisfied.'" *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1298 (10th Cir. 2011) (quoting *Shin v. Mukasey*, 547 F.3d 1019, 1024 (9th Cir.2008)); *see also* 8 C.F.R. § 1240.10(c) (stating that "[i]f the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent."). That Mr.

24

Shyaka expressly conceded his removability is sufficient to establish his removability. *Jimenez-Guzman*, 642 F.3d at 1298. While an immigration judge has an obligation to investigate removability, Mr. Shyaka conceded removability, so the immigration judge in his case did not have to develop the record as it pertained to Mr. Shyaka. Mr. Shyaka appears to want to retract his concession of removability in his PFR. But he cannot escape the consequences of his concession. On the other hand, Ms. Mukantagara has never conceded her removability and has consistently contested USCIS's termination decision and provided evidence in support of her refugee status and asylum application.

At bottom, supplementation of the record in Ms. Mukantagara's PFR remains possible either through an order from the court of appeals transferring the case to the district court for additional factfinding pursuant to 28 U.S.C. § 2347(b)(3), through judicial notice pursuant to Federal Rule of Evidence 201, or through the appointment of a special master pursuant to Federal Rule of Appellate Procedure 48(a). However, the government reserves its right to object to any request for supplementation on the basis that Mr. Shyaka conceded his removability.

## CONCLUSION

For the foregoing reasons and those in Appellees' Brief and Appellees' Petition for Rehearing, this Court should affirm the District Court's dismissal finding that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review over USCIS's decision.

Dated: August 4, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel

JOSHUA C. McCROSKEY
Trial Attorney

*s/Aneesa Ahmed*
ANEESA AHMED
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation—
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 451-7744
Aneesa.Ahmed@usdoj.gov

*Attorneys for Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the Court's Order for supplemental briefing because it is 25 pages in length. This brief also complies with the Order and typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*s/ Aneesa Ahmed*
Aneesa Ahmed
Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

_s/ Aneesa Ahmed_
Aneesa Ahmed
Trial Attorney

A1