CASE NO. 24-4071

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**AGNES MUKANTAGARA and EBENEZER SHYAKA,**
**Plaintiffs - Appellants,**

**v.**

**US DEPT. OF HOMELAND SECURITY (DHS), MARKWAYNE MULLIN,** Secretary; **US CITIZENSHIP AND IMMIGRATION SERVICES (USCIS), JOSEPH B. EDLOW,** Director, USCIS, **ROB MATHER,** District Director, USCIS District 19, Denver, and **KIN MA,** USCIS Field Office Director, Salt Lake City,
**Defendants - Appellees.**

## PLAINTIFFS-APPELLANTS' SUPPLEMENTAL BRIEF

## ON PANEL RE-HEARING OF APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

**Chief District Judge Robert J. Shelby**
**Case No. 2-20-cv-00987-rjs-dao**

Daniel R. Black, UT 15095
Stowell Crayk, PLLC
4252 S. 700 E.
Millcreek, UT 84107
Tel.: (801) 944-3459
dan@lawscb.com

Marti L. Jones, UT 5733
Stowell Crayk, PLLC
4252 S. 700 E.
Millcreek, UT 84107
Tel.: (801) 944-3459
marti@lawscb.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................i

TABLE OF AUTHORITIES ........................................................... ii

I.  INTRODUCTION .................................................................1

II. ARGUMENT .......................................................................3

   A. *Mullin v. Doe* does not call into question this Court's holding that § 1252(a)(2)(B)(ii) permits judicial review of the § 1157(c)(4) determination. ...................................................................................3

      1. *Mullin v. Doe* rested on the meaning of the statutory bar to review at issue, whose language is distinct from 8 U.S.C. § 1252(a)(2)(B)(ii). 3

      2. The APA merger statute and its judicial corollary. ...........................5

      3. The *Mullin* corollary reaches an agency action only if the action is "of the sort" the bar shields. .............................................................8

      4. The § 1157(c)(4) determination is not of the sort § 1252(a)(2)(B)(ii) shields. ...................................................................................10

      5. The § 1157(c)(4) determination therefore remains reviewable. ........11

   B. Judicial review of the § 1157(c)(4) determination is available in the District Court under the Administrative Procedure Act. ..........................................13

      1. The termination is discrete, final agency action. .............................13

      2. There is no other adequate remedy in a court....................................15

      3. The District Court is the only open forum, and APA review lies. ...19

III. CONCLUSION....................................................................21

CERTIFICATION OF WORD COUNT.............................................................24

CERTIFICATE OF SERVICE, PRIVACY REDACTIONS AND VIRUS SCAN .................................................................................25

# TABLE OF AUTHORITIES

**Cases**

***Supreme Court Cases***

*Bennett v. Spear*, 520 U.S. 154 (1997) ..............................................................13, 14

*Board of Regents v. Roth*, 408 U.S. 564 (1972)......................................................21

*Bouarfa v. Mayorkas*, 604 U.S. 6 (2024).................................................................12

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)........................................................15

*Califano v. Sanders*, 430 U.S. 99 (1977) ................................................................19

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ........................10

*Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010) ..........................................19

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................10

*INS v. St. Cyr*, 533 U.S. 289 (2001).........................................................................21

*Kucana v. Holder*, 558 U.S. 233 (2010) .................................................................4, 5

*Landon v. Plasencia*, 459 U.S. 21 (1982)...............................................................21

*Leedom v. Kyne*, 358 U.S. 184 (1958) .....................................................................12

*Mathews v. Eldridge*, 424 U.S. 319 (1976)..............................................................20

*McNary v. Haitian Refugee Ctr.*, 498 U.S. 479 (1991) ...........................................21

*Mullin v. Doe*, 609 U.S. ___ (2026)........... 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 20, 21, 22

*Patel v. Garland*, 596 U.S. 328 (2022) ....................................................................5

*Slack Technologies, LLC v. Pirani*, 598 U.S. 759 (2023).........................................5

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016) .....................6, 15

*Webster v. Doe*, 486 U.S. 592 (1988) .................................................................10, 20

*Wilkinson v. Garland*, 601 U.S. 209 (2024) ...........................................................11

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................................11


***Tenth Circuit Cases***

*Dekovic v. Rubio*, 169 F.4th 1002 (10th Cir. 2026)................................................15

*Mukantagara v. DHS*, 67 F.4th 1113 (10th Cir. 2023)........................................2, 14

*Shyaka v. Blanche*, No. 21-9583 (10th Cir. 2022)..................................................17

***Other Circuit Cases***

*Amgen Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004)................7, 8, 9, 10, 11, 13, 22

*DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503 (D.C. Cir. 2019) ........................7, 8, 9

*Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum. Servs.*, 830 F.3d 515 (D.C. Cir. 2016) ...................................................................................................7

*Hosseini v. Johnson*, 826 F.3d 354 (6th Cir. 2016) ...............................................20

*Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125 (D.C. Cir. 2017)............................7, 9

*Ortez v. USCIS*, 169 F.4th 269 (4th Cir. 2026)......................................................20

*Semper v. Gomez*, 747 F.3d 229 (3d Cir. 2014)......................................................19

*Tex. All. for Home Care Servs. v. Sebelius*, 681 F.3d 402 (D.C. Cir. 2012) ...........7

***Board of Immigration Appeals Cases***

*Matter of A-S-J-*, 25 I. & N. Dec. 893 (BIA 2012).......................................16, 17, 18

**Constitutional Provisions**

U.S. Const. amend. V................................................................................................20

**Statutes and Regulations**

5 U.S.C. § 701(a)(2)..................................................................................................10

5 U.S.C. § 702 .............................................................................................2, 13, 19, 22

5 U.S.C. § 704 .......................................................................................2, 6, 13, 15, 21, 22

5 U.S.C. § 706 ..................................................................................................2, 13, 22

8 U.S.C. § 1101(a)(42)........................................................................................9, 10, 18

8 U.S.C. § 1155 ........................................................................................................12

8 U.S.C. § 1157(c)(2)...........................................................................................18, 21

8 U.S.C. § 1157(c)(4).................................... 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 22

8 U.S.C. § 1158(b)(3)(B) ....................................................................................18, 19

8 U.S.C. § 1159.........................................................................................................20

8 U.S.C. § 1252(a)(2)(B)(i)........................................................................................5

8 U.S.C. § 1252(a)(2)(B)(ii) ...................... 1, 3, 4, 9, 10, 11, 12, 14, 15, 20, 21, 22

8 U.S.C. § 1252(a)(2)(D) ...........................................................................................17

8 U.S.C. § 1252(a)(5)................................................................14

8 U.S.C. § 1252(b)(4)(A)..........................................................2, 17

8 U.S.C. § 1254a(b)(5)(A) .........................................3, 4, 5, 9, 11, 21

28 U.S.C. § 1331 .........................................................2, 13, 19, 22

42 U.S.C. § 1395ff....................................................................7

42 U.S.C. § 1395oo...................................................................7

8 C.F.R. § 207.9 ..................................................................13, 16

8 C.F.R. § 208.24 ....................................................................16

## Other Authorities

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (codified as amended at 6 U.S.C. §§ 101 et seq.)..........................................16

## I.  INTRODUCTION

In its now vacated decision, this Court held that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review of the United States Citizenship and Immigration Services' ("USCIS") determination, under 8 U.S.C. § 1157(c)(4), that Ms. Mukantagara "was not in fact a refugee" at the time of her admission. The Court now asks whether the Supreme Court's decision in *Mullin v. Doe,* 609 U.S. ___ (2026), calls that holding into question and, if review remains available, what its basis is. Both questions are questions of law, reviewed de novo.

For two reasons, the answer to the first question is no. First, the Court in Mullin was working with a different statutory limit on judicial review.  Second, the sentence the panel's order quotes from *Mullin* references a judicial corollary to the statutory merger provision of the Administrative Procedure Act ("APA") — that when a final agency action is unreviewable, the subsidiary or related determinations inseparable from the unreviewable final decision are unreviewable as well. That corollary does not reach § 1157(c)(4)'s mandatory prerequisite: termination is restricted to persons who were "not in fact a refugee" at the time of admission — a finding on which the agency's authority to terminate depends.

The reason turns on the nature and scope of the clause (ii) preclusion, and on the character and essence of the § 1157(c)(4) finding. Clause (ii) precludes judicial review only of decisions Congress committed to the agency's discretion. The § 1157(c)(4) prerequisite is not a discretionary decision: it is a mandatory, standard-governed finding. That finding establishes the extent of the agency's

1

discretionary authority; it is itself no exercise of discretion. A preclusion of judicial review tied to the character and essence of the decision being reviewed — here, to decisions committed to the agency's discretion — cannot reach a mandatory finding that is of a qualitatively different character and essence. The corollary referenced in *Mullin* cannot reach it either, because the corollary by itself cannot reach beyond the scope of the judicial-review preclusion provision under consideration.

The answer to the second question is yes, because review in the District Court is available under the APA, 5 U.S.C. §§ 702, 704, and 706, together with 28 U.S.C. § 1331. The termination of refugee status is discrete, final agency action that strips a vested status, and this Court has already held that it does not arise from removal proceedings.[1] No petition for review can reach it: the immigration courts do not review USCIS refugee-status terminations, and 8 U.S.C. § 1252(b)(4)(A) confines any petition for review to "the administrative record on which the order of removal is based" — a record which the refugee termination never enters. Because no other adequate remedy exists in a court, the APA supplies review in the only forum the statute leaves open: the District Court.

What these questions ultimately decide is whether a statutory limit on agency power is one that a court may ever enforce. Section 1157(c)(4) permits

---

[1] *Mukantagara v. DHS*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("Plaintiffs do not challenge their removal proceedings. Rather, they challenge USCIS's determination to terminate refugee status.").

2

termination only "if" the agency has first determined that the person "was not in fact a refugee." An Immigration Judge ("IJ"), weighing the same allegations on which USCIS relied, found Ms. Mukantagara credible, and rejected those allegations. Despite this contrary finding by an IJ, the government's reading of 8 U.S.C. § 1252(a)(2)(B)(ii) would preclude all judicial review of USCIS's determination. A condition on agency authority that no court may review is not a condition at all.

## II. ARGUMENT

### A. *Mullin v. Doe* does not call into question this Court's holding that § 1252(a)(2)(B)(ii) permits judicial review of the § 1157(c)(4) determination.

#### 1. *Mullin v. Doe* rested on the meaning of the statutory bar to review at issue whose language is distinct from 8 U.S.C. § 1252(a)(2)(B)(ii).

The Supreme Court went to great lengths in *Mullin* to interpret the scope of the statutory bar to review in 8 U.S.C. § 1254a(b)(5), which bars judicial review of "any determination … with respect to the … termination" of a designation of a country for TPS. In general, the Court found that "[t]his text is clear, and its plain meaning is very broad." slip op., at 12; *see also, id.* (highlighting Congress' inclusion of the phrase "with respect to" as support for its broad interpretation). More particularly, the Court spent multiple pages of the decision addressing the meaning of the "key term 'determination,'" and rejecting various arguments raised by the respondents as in conflict with either of the possible definitions for this term. *Mullin*, slip op., at 12-18. The final argument of respondents in *Mullin* was

that the term "determination" did not apply to "subsidiary decisions." *Id*. at 17.
The Court roundly rejected this: "For reasons already explained, this argument is inconsistent with the plain meaning of the statutory text." *Id.*

In contrast, and consistent with the panel's original decision, the bar to review in § 1252(a)(2)(B)(ii) is markedly distinct from that in § 1254a(b)(5). Clause (ii) of § 1252(a)(2)(B) does not shield agency action by subject; it shields "any other decision or action the authority for which is specified … to be in the discretion of" the agency — that is, it shields only decisions committed to the agency's discretion. *See Kucana v. Holder*, 558 U.S. 233, 246-247 (2010) ("Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute"). The § 1157(c)(4) prerequisite finding is not such a decision.

The difference is not just that the two bars sit in different sections of the statute: they are built to do different work. Section 1254a(b)(5)(A) is a *subject-matter* bar — it withdraws review of "any determination … with respect to" a TPS designation — and *Mullin* held that language broad precisely because of the words Congress used, "any" and "with respect to." slip op., at 12. Those are the words that swept in the "subsidiary determinations" *Mullin* discussed: a subsidiary determination is still a "determination … with respect to" the TPS designation, so it falls within the bar by its own terms.

By contrast, clause (ii) contains no such language. It does not bar "determinations with respect to" a subject; it bars only "any other decision or

4

action the authority for which is specified … to be in the discretion of" the agency — a bar keyed to the *nature* of the decision, not its subject. Its operative word, "specified," narrows rather than broadens: clause (ii) reaches a decision only where Congress has specified, in the statute itself, that the decision is committed to the agency's discretion. *Kucana*, 558 U.S. at 243–245. That is the opposite of the broadening language *Mullin* construed.

Neighboring provisions written in "distinct language" do not "necessarily travel together," *Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 770 n.3 (2023), and *Patel* drew the same contrast within § 1252(a)(2)(B) itself: "any judgment regarding the granting of relief" broadens clause (i) to reach eligibility determinations, while clause (ii)'s "specified … to be in the discretion" confines it to discretionary decisions. *Patel v. Garland*, 596 U.S. 328, 338–39 (2022). Because Congress used the "any determination … with respect to" language in the TPS bar but not in clause (ii), *Mullin*'s construction of that broad subject-matter bar does not control the scope of the narrower discretion bar Congress enacted here. Clause (ii) bars review only of decisions Congress has committed to the agency's discretion — not every determination touching a subject, as the broader, more inclusive preclusions Congress writes elsewhere do — and the nondiscretionary § 1157(c)(4) predicate falls outside that prohibition.

## 2. The APA merger statute and its judicial corollary.

The Court also found that respondent's argument that § 1254a(b)(5) did not encompass subsidiary decisions, "*also* contradicts general administrative-law

principles." *Mullin,* slip op., at 17 (emphasis added). The panel's question references a sentence from *Mullin* — "[i]f the final agency action is unreviewable, then so too are subsidiary determinations," *Mullin v. Doe*, slip op., at 18 — and asks whether that sentence functions to consolidate the prerequisite determination with the subsequent exercise of discretionary authority in this case. As *Mullin* and other cases make clear, this question can only be answered with reference to the precise language of the statutory grant of, or bar to, judicial review.

To answer the question, a brief review of the APA merger statute and its judicial corollary is necessary. The APA doctrine of merger is found in the middle of 5 U.S.C. § 704:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

The APA doctrine of merger is the basic principle that "preliminary, procedural, or intermediate agency actions not directly reviewable" — either because they are not final actions or because they are not directly reviewable — are nevertheless "subject to judicial review on the review of the final agency action." 5 U.S.C. § 704. Thus, the *preliminary, procedural, or intermediate* actions that are *not reviewable* are merged into the final agency action, and are completely subject to review as part of judicial review of the final agency action. *See, e.g., U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597-598 (2016).

As referenced by the Court in *Mullin*, the D.C. Circuit has developed a corollary, to the merger doctrine, which is that "if the final agency action is unreviewable, then so too are subsidiary determinations." The *Mullin* Court cited *Amgen Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004) for this corollary. *See also Tex. All. for Home Care Servs. v. Sebelius*, 681 F.3d 402 (D.C. Cir. 2012); *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum. Servs.*, 830 F.3d 515 (D.C. Cir. 2016); *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125 (D.C. Cir. 2017); and *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503 (D.C. Cir. 2019).

*Amgen* considered whether judicial review over the type of Medicare payment adjustment at issue was precluded, and concluded that it was. 357 F.3d at 113. *Texas Alliance* similarly concluded that the "presumption of reviewability here is overcome by the specific and emphatic statutory language prohibiting judicial review of the competitive bidding procedure," (681 F.3d at 408), and that it would not "make sense that the Congress would intend to preclude a bidder deemed financially ineligible from challenging the disqualifying financial standards and yet allow a non-bidder to seek review of the same standards," *id*. at 410. In *Florida Health Sciences Center*, the D.C. Circuit similarly held that the Affordable Care Act bar to judicial review of "any estimate of the Secretary" precluded judicial review of the data relied upon to produce the estimates, stating that "the underlying data here are 'indispensable' and 'integral' to, and 'inextricably intertwined' with, the Secretary's estimate." 830 F.3d at 519. In *Knapp Medical Center*, the D.C. Circuit concluded that statutory preclusion

language blocking administrative or judicial review under 42 U.S.C. § 1395ff, § 1395oo, or otherwise of an exception process, bars judicial review of both the overarching process and the individual exception grants arising out of it. 875 F.3d at 1132. Finally, in *DCH Regional Medical Center*, the D.C. Circuit again followed these precedents to conclude that a statute precluding judicial review of estimates used by the Secretary of Health and Human Services operates to preclude judicial review of the methodology used to make the estimates. 925 F.3d at 506. Notably, each of these cases grounds its holding in the statutory language of the particular bar to review.

The question this Court poses is whether Justice Alito's shorthand reference in *Mullin* to this line of cases reaches the § 1157(c)(4) determination. It does not: the explicit reasoning and holdings of these very cases limit the corollary's reach.

### 3. The *Mullin* corollary reaches an agency action only if the action is "of the sort" the bar shields.

What these cases hold, beginning with Amgen, is a measured principle, carefully rooted in the text of each bar to judicial review. In Amgen, the D.C. Circuit explained that a statutory bar on review does not sweep in everything that precedes the shielded action; it reaches only what the bar, by its terms, shields, and a court must police that boundary:

> If a no-review provision shields particular types of administrative action, a court … must determine whether the challenged agency action is of the sort shielded from review. Otherwise, agencies could characterize reviewable or unauthorized action as falling within the scope of no-review provisions whose application to such action

> Congress did not intend. In such cases, the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action ….

*Amgen*, 357 F.3d at 113. It is also worth noting here that, like the text of 8 U.S.C. § 1254a(b)(5)(A) explicated by the Court in *Mullin*, each of the bars to judicial review at issue in this line of cases is explicitly tied to a particular subject matter: Medicare payment adjustments in *Amgen*; a competitive bidding procedure in *Texas Alliance*; an "estimate of the Secretary" in *Florida Health Sciences Center*; an exception process in *Knapp*; "estimates" again in *DCH Reg'l Med. Ctr*.

Two things follow. First, the merger corollary is not a blanket rule that every decision surrounding an unreviewable final action shares its unreviewability. In each case the label of "a subsidiary determination" is only applied after the reviewing court first concludes that the determination at issue is "of the sort" Congress intended the particular judicial review bar to shield. Second, whether a determination is "of the sort shielded" is a question for the court, which "must determine" it, and may not allow an action to be "characterize[d] … as falling within the scope of [a] no-review provision[]" when it is not. *Amgen*, 357 F.3d at 113. The reach of the *Mullin* corollary, in short, is fixed by what the particular judicial review bar is intended to shield, not by whether a determination happens to precede the final action. Here, § 1252(a)(2)(B)(ii) does not reach the § 1157(c)(4) prerequisite determination (that an individual admitted as a refugee was not, in fact or law, a refugee as defined in § 1101(a)(42) at the time of admission) because

that prerequisite determination is not a discretionary one shielded by § 1252(a)(2)(B)(ii).

### 4. The § 1157(c)(4) determination is not of the sort § 1252(a)(2)(B)(ii) shields.

Applying those criteria, the § 1157(c)(4) "not in fact a refugee" prerequisite finding is not the sort of decision that Congress intended § 1252(a)(2)(B)(ii) to shield. Section 1157(c)(4) is bifurcated. It explicitly grants the agency discretion to decide whether or not to terminate refugee status, but that grant of discretion is conditioned on a mandatory, standard-governed prerequisite: "if" the agency "determines" that the person "was not in fact a refugee within the meaning of § 1101(a)(42)." The only discretion the statute commits to the agency runs to the consequence: "may be terminated" authorizes the agency to withhold termination even from a person who was not in fact a refugee.

The prerequisite predicate is a nondiscretionary determination. Whether a person was "a refugee within the meaning of § 1101(a)(42)" is governed by a fixed statutory standard — there is "law to apply." *Webster v. Doe*, 486 U.S. 592, 599–601 (1988); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). A determination governed by that kind of standard is not committed to agency discretion even under the broad § 701(a)(2) formulation; still less is it a decision "the authority for which is specified … to be in the discretion" of the agency under clause (ii)'s narrower text.

10

That mandatory prerequisite finding is also not "of the sort" clause (ii) shields because, as *Amgen* identified, the prerequisite finding fixes the extent of the agency's authority. Absent a determination that the person was not in fact a refugee, the agency has no § 1157(c)(4) authority to terminate at all. Review of that statutorily mandated prerequisite finding is therefore review of "the extent of the … authority," not "the … exercise of discretion," and the former "is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). As *Amgen* holds, the question of whether the agency had authority to act is one a court "must" reach; it cannot be placed beyond review by characterizing the authority-conditioning predicate as a subsidiary of the discretionary termination. The merger corollary does not reach USCIS's § 1157(c)(4) finding.

### 5. The § 1157(c)(4) determination therefore remains reviewable.

Section 1157(c)(4) proceeds in two steps — a mandatory eligibility predicate and a discretionary consequence — and, as this Court previously found in its now-vacated decision, § 1252(a)(2)(B)(ii) permits review of the predicate. *See Wilkinson v. Garland,* 601 U.S. 209, 217–218 (2024) (describing the two-step structure in which the agency first assesses statutory eligibility and only then exercises discretion, and explaining that the first-step eligibility determination "was not discretionary"). Mullin does not call that holding into question. It construed a different and broader bar, addressed to a fundamentally different decision: the Secretary's discretionary, policy-laden termination of entire Temporary Protected Status designations — country-wide judgments affecting

11

hundreds of thousands of TPS holders — foreclosed from review by a subject-matter bar on "judicial review of any determination … with respect to" the "termination … of a designation … of a foreign state," 8 U.S.C. § 1254a(b)(5)(A). The § 1157(c)(4) determination is the opposite in kind: an individualized, standard-governed finding whether one person "was not in fact a refugee" at admission.

This Court previously recognized that *Bouarfa* held § 1155 unreviewable only because that provision "has no threshold requirements," and that the Supreme Court expressly "decline[d] to resolve whether § 1252(a)(2)(B)(ii) strips … jurisdiction to review threshold determinations that the agency must make before exercising discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024), Section 1157(c)(4)'s "if … not in fact a refugee" predicate is that reserved threshold determination — a question *Bouarfa* left open, not one it resolved against review. And *Mullin* does not reopen it: *Mullin* construed a subject-matter bar, while *Bouarfa*'s reservation concerns the discretion bar of clause (ii). The two do not intersect.

Indeed, if the *Mullin* merger corollary could pull the nondiscretionary eligibility predicate into § 1252(a)(2)(B)(ii), a determination that a person "was not in fact a refugee" would be beyond review no matter how baseless — even where, as here, an IJ weighed the very allegations USCIS relied upon, found Ms. Mukantagara credible, and decided that she met the definition of refugee. That would read the statute's "if … in fact" condition out of existence and let the

12

agency exercise, without any accountability, authority Congress granted only conditionally. A statutory limit on agency power that no court may examine is no limit at all. *Cf. Leedom v. Kyne*, 358 U.S. 184, 188–90 (1958) (review of agency action "in excess of its delegated powers" survives even a general withdrawal of jurisdiction) — the same principle recognized in *Amgen*, 357 F.3d at 111–112.

## B. Judicial review of the § 1157(c)(4) determination is available in the District Court under the Administrative Procedure Act.

The answer to the panel's second question is yes. The termination is final agency action for which there is no other adequate remedy in a court; the APA therefore makes it reviewable in the District Court, 5 U.S.C. §§ 702, 704, 706, on federal-question jurisdiction, 28 U.S.C. § 1331. Because no petition for review of a final removal order can ever reach the termination of refugee status, the District Court is the only forum.

### 1. The termination is discrete, final agency action.

The termination of refugee status is "final agency action." Under *Bennett v. Spear*, agency action is final when it "mark[s] the consummation of the agency's decision-making process" and is action "by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. 154, 177–78 (1997). USCIS's termination is both. It is the agency's last word — once USCIS determined that Ms. Mukantagara "was not in fact a refugee" at admission and terminated her status, nothing further remained for the agency to decide, and there is no appeal within USCIS or DHS. 8 C.F.R. § 207.9. And, the termination action

13

fixes rights and consequences at once, stripping Ms. Mukantagara and her son of a lawful status, work authorization, protection from removal, and the derivative parent-child protection it conferred. Its finality lies in that legal effect — the loss of a vested status — not in the absence of an administrative appeal.

The reviewable component of that final action is the determination Argument A identifies above: the mandatory, standard-governed finding that Ms. Mukantagara "was not in fact a refugee" at admission. Plaintiffs do not seek review of the discretionary choice to terminate — the "may be terminated" decision that, had the agency declined to make it, would be unreviewable. Plaintiffs seek review of the nondiscretionary predicate on which that choice depended, and which § 1252(a)(2)(B)(ii) does not shield.

Nor does the termination belong to the removal-review scheme, and the removal proceedings that follow do not render it any less final. It is not an "order of removal," 8 U.S.C. § 1252(a)(5), and this Court has already held that it does not "arise from" any effort to remove Plaintiffs. *Mukantagara v. DHS*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("Plaintiffs do not challenge their removal proceedings. Rather, they challenge USCIS's determination to terminate refugee status."). That USCIS's determination is followed by removal proceedings before EOIR — a component of a different department — does not defeat its finality: in *Bennett,* the Fish and Wildlife Service's biological opinion was final agency action even though its consequences depended on later action by the Bureau of Reclamation. 520 U.S. at 177–78.

14

This Court applied the same principle last year, in the different context of a visa reclassification, holding an agency's decision final "even if the ultimate impact of that action rests on a decision by another administrative agency," and "even though the consulate officer w[ould] have the ultimate say in the beneficiary's immigration status." *Dekovic v. Rubio*, 169 F.4th 1002, 1011–12 (10th Cir. 2026) (citation omitted). If anything, this is a stronger case for finality than *Hawkes*, where the Court held an approved jurisdictional determination final even though "no administrative or criminal proceeding can be brought for failure to conform to the [JD] itself," because legal consequences flowed from it all the same. 578 U.S. at 599. USCIS's termination does not merely portend consequences; it inflicts them at once, stripping Plaintiffs' vested status. The termination is a discrete, antecedent agency action that the removal statute's channeling provisions do not govern — and, as Argument A shows, § 1252(a)(2)(B)(ii) does not bar review of its mandatory predicate.

## 2. There is no other adequate remedy in a court.

The APA makes a final agency action reviewable unless there is "other adequate remedy in a court." 5 U.S.C. § 704. The alternative must be genuinely adequate; § 704 does not defeat District Court review merely because some other avenue exists in form. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Two avenues might be imagined here — a petition for review of an eventual order of removal, and a grant of asylum in the removal proceedings. Neither is an adequate

remedy for the injury this termination inflicted and continues to inflict on Plaintiffs.

A petition for review cannot reach the termination by USCIS. The regulation governing refugee terminations, 8 C.F.R. § 207.9, affords no USCIS review of the termination; it directs that refugee status "will be terminated" and channels the now-former refugee into removal proceedings. Once there, according to a Board of Immigration Appeals decision, no immigration court is authorized to review the USCIS termination. *Matter of A-S-J-*, 25 I. & N. Dec. 893, 898 (BIA 2012) ("[T]he regulations do not confer jurisdiction on the Immigration Judge to review a DHS termination of an asylum grant.").

The Board's reasoning rests on two grounds. First, an immigration court is not an appellate body with jurisdiction over USCIS, and does not review USCIS decisions; an IJ's only authority is to adjudicate an asylum application *de novo*. The only adjudication an immigration court can offer a terminated refugee is a fresh, *de novo*, asylum application; it cannot review or re-adjudicate the termination, and it can never grant refugee status, because that status is conferred through the overseas refugee program and never by an immigration court. Second, the Homeland Security Act of 2002's[2] separation of DHS and EOIR into distinct adjudicative structures leaves the immigration court without jurisdiction to review a DHS termination. *Id*. at 898–899. While the BIA in *Matter of A-S-J-* construed

---

[2] Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (codified as amended at 6 U.S.C. §§ 101 et seq.).

the asylum-termination regulation, 8 C.F.R. § 208.24, the IJ in the Plaintiffs' own

removal proceedings cited *Matter of A-S-J-* as precluding his jurisdiction to review

USCIS's termination decision. Aplt. App. Vol. I, 152 (citing *A-S-J-* for the

proposition that if DHS first revokes such status, the IJ may not review such

revocation).

Because the immigration court does not review USCIS's termination

action, the termination—and the USCIS record underlying it—never becomes part

of "the administrative record on which the order of removal is based." 8 U.S.C. §

1252(b)(4)(A). Section 1252(b)(4)(A) confines the court of appeals, on a petition

for review, to decide the case "only on" that record, leaving no avenue for

USCIS's termination to be reviewed. The two authorities operate together: *A-S-J-*

keeps the termination out of the removal record, and § 1252(b)(4)(A) forbids the

court of appeals from looking beyond that record of removal proceedings. The

savings clause in § 1252(a)(2)(D) does not change this, because it too is exercised

on that same record.

That confinement is no abstraction: when Mr. Shyaka moved to supplement

the record on his own petition for review[3] to add the record of USCIS's

termination decision to the agency record, the government opposed on precisely

this ground, arguing that the termination materials "were not part of the

---

[3] *Shyaka v. Blanche*, No. 21-9583, is currently abated before this Court pending this case
and the government's appeal, now before the Board, of Ms. Mukantagara's grant of
asylum.

administrative record before the [BIA] and thus may not be considered by the Court on review." *Shyaka v. Blanche*, No. 21-9583, Dkt. 26, at 2 (10th Cir. Jan. 6, 2022) (invoking § 1252(b)(4)(A)). This Court denied Mr. Shyaka's motion. Order, No. 21-9583 (10th Cir. Jan. 10, 2022).  A petition for review is therefore not an adequate alternative remedy under the APA. Unless and until *Matter of A-S-J-* is overruled, APA review in the United States District Court of USCIS's termination decision is the only available remedy.

The grant of asylum that the removal proceedings might yield is no more adequate — at least not for the specific injury this case presents. For Ms. Mukantagara standing alone, an immigration judge's grant of asylum might well suffice, and Plaintiffs do not contend otherwise.  It does not suffice here, however, because Ms. Mukantagara is not alone: she has a son, Mr. Shyaka, who was harmed even more fundamentally by the termination of his mother's refugee status. When the family was admitted as refugees on August 3, 2005, Mr. Shyaka was sixteen. Aplt. App. Vol. I, 152 (IJ Decision, at 2). Section 1157(c)(2)(A)–(B) entitled him, as the unmarried minor child of a refugee, to derivative refugee status, without any requirement on his part that he personally prove that he met the requirements of 8 U.S.C. § 1101(a)(42).  *See* § 1157(c)(2)(B). But that classification exists only for the child of a "parent granted admission as a refugee," *id.*; terminating Ms. Mukantagara's refugee status extinguishes it.

Asylum cannot restore it. Section 1157(c)(2)(B) froze Mr. Shyaka's age as of the date his mother applied for refugee status — when he was a minor — and

that is what gave him derivative refugee status upon admission in 2005. Terminating his mother's refugee status destroyed that protection, and the asylee-derivative provision cannot substitute for it. Although § 1158(b)(3)(B) freezes a child's age as of "the date on which such parent applied for asylum" — language materially identical to the refugee provision — the only asylum application this family could file postdates the injury. Refugees are admitted through the overseas refugee program and file no asylum application; neither Ms. Mukantagara nor Mr. Shyaka had any occasion to file a Form I-589 until they were placed in removal proceedings in February 2017. By then Mr. Shyaka had turned twenty-one — on January 31, 2010 — years earlier, and § 1158(b)(3)(B) would measure his age as of that 2017 filing, by which point he had long aged out. No earlier asylum application exists to hold the freeze open. A renewed grant of asylum thus cannot give Ms. Mukantagara back the right she held as a refugee to shield her son with her own status; it forces Mr. Shyaka, for the first time, to prove that he independently qualifies for asylum. Only review — and reversal — of the termination can restore the derivative protection the termination destroyed.

### 3. The District Court is the only open forum, and APA review lies.

Because the termination is final agency action and no other adequate remedy exists in a court, it is reviewable in Federal District Court on federal-question jurisdiction, 28 U.S.C. § 1331, with § 702 supplying the cause of action and the waiver of sovereign immunity, and the § 1331 jurisdiction the APA itself does not confer. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). Where Congress

19

has left no meaningful alternative forum, review under § 1331 and the APA remains available. *Semper v. Gomez*, 747 F.3d 229, 241–42 (3d Cir. 2014); *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 489–91 (2010). And courts have located this type of judicial review in the District Courts for refugee and asylee status determinations that cannot be reached through a petition for review. *Hosseini v. Johnson*, 826 F.3d 354, 358–62 (6th Cir. 2016) (holding that a USCIS denial of adjustment of status under 8 U.S.C. § 1159 is a final decision subject to judicial review under the APA of the non-discretionary eligibility requirements); *Ortez v. USCIS*, 169 F.4th 269, 273 (4th Cir. 2026) (holding that a challenge to the agency's statutory interpretation "is entirely separate from other discretionary decisions and involves a question of USCIS's statutory authority" that falls outside the scope of section 1252(a)(2)(B)(ii) jurisdiction stripping).

Reading § 1252(a)(2)(B)(ii) to foreclose all judicial review would do more than close the courthouse to a statutory claim; it would close it to a constitutional one. Plaintiffs plead a Fifth Amendment procedural due process claim — that terminating their vested refugee status through an informal procedure, without notice of the witnesses or allegations against them, without any opportunity to test that evidence, and with no appeal, deprived them of liberty and property interests without due process. Compl. Count IV, ¶¶ 168–176; *see Mathews v. Eldridge*, 424 U.S. 319 (1976). The Complaint alleges, in terms, that "the combination of informal procedure and regulatory language barring any appeal of the agency action is a further violation of constitutional due process." *Id.* ¶ 175. To read §

1252(a)(2)(B)(ii) to bar all review is thus to leave with no forum a constitutional claim—precisely the circumstance in which the Supreme Court requires a clear statement before a statute is construed to preclude review of constitutional claims. *Webster*, 486 U.S. at 603; *Mullin*, slip op., at 19 (opinion of Alito, J.) (restating the rule); *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001). Clause (ii), which precludes review of discretionary decisions, is not that clear statement. And the claim is substantial: refugee status is no revocable privilege, but a status the government may strip only upon a specific statutory finding — a "legitimate claim of entitlement," *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) — held by noncitizens long admitted and settled here, *Landon v. Plasencia*, 459 U.S. 21, 32–34 (1982). Its merits belong in the District Court; its substantiality is enough to require that a forum for judicial review must exist. *Cf. McNary v. Haitian Refugee Ctr.*, 498 U.S. 479 (1991).

Finally, the controversy is live and redressable only by review of the termination. The injury is neither hypothetical nor curable elsewhere: as Ms. Mukantagara's own proceedings show, the derivative classification § 1157(c)(2)(B) secured for Mr. Shyaka cannot be restored by a renewed grant of asylum, or by anything short of setting the termination aside. A live injury that a single forum can redress is the paradigm case for the review § 704 provides.

## III. CONCLUSION

For the reasons given, the answer to the panel's first question is no, and the answer to its second is yes. *Mullin* construed a different bar — the subject-matter

bar on "any determination … with respect to" a TPS designation, 8 U.S.C. § 1254a(b)(5)(A) — and says nothing about 8 U.S.C. § 1252(a)(2)(B)(ii), a different provision precluding judicial review of "any other decision or action...the authority for which is specified under this subchapter to be in the discretion...."

The corollary invoked in *Mullin* is explicitly tied to the specific terms of the particular judicial-review preclusion provision under consideration in each case, and "a court … must determine whether the challenged agency action is of the sort shielded from review." *Amgen*, 357 F.3d at 113. The corollary does not preclude judicial review where the agency action is not of the sort Congress intended to shield with the particular judicial-review preclusion under consideration.

The § 1157(c) (4) "not in fact a refugee" finding is a mandatory, nondiscretionary predicate that § 1252(a)(2)(B)(ii) cannot shield because it shields only decisions specified to be in the discretion of the Secretary of DHS or the Attorney General.  Nor can the corollary invoked in *Mullin* shield behind a judicial review bar aimed only at discretionary decisions a prerequisite finding that is not only *not* discretionary, but that functions explicitly as a mandatory precondition to any exercise of discretion.

*Mullin* thus gives this Court no reason, on reconsideration, to depart from the conclusion it reached in its now-vacated decision: that § 1252(a)(2)(B)(ii) permits judicial review of the § 1157(c)(4) eligibility finding. Review of that eligibility finding lies in the District Court under the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, 706, on federal-question jurisdiction, 28 U.S.C. § 1331

22

— because no immigration court can review a DHS termination decision, no petition for review of an IJ decision can ever reach the mandatory finding. This Court should reaffirm that USCIS's § 1157(c)(4) eligibility determination is subject to judicial review, and reinstate its judgment reversing the District Court's order and remanding for further proceedings.

RESPECTFULLY SUBMITTED this <u>4th</u> day of August, 2026.

*/s/Daniel R. Black*
Stowell Crayk, PLLC
2788 Washington Blvd.
Ogden, Utah 84401
Telephone: (385) 355-9256
Email: dan@lawscb.com


*/s/Marti L. Jones*
Stowell Crayk, PLLC
4252 S. 700 E.
Millcreek, UT 84107
T: 385 528 1038
F: 801 483 0705
marti@lawscb.com

# <u>CERTIFICATE OF COMPLIANCE/DIGITAL SUBMISSION</u>

The Opposition to Petition for Rehearing En Banc of Appellant has been prepared using:

Microsoft Word

Times New Roman.

11 through 14-Point Type.

According to Microsoft Word, the body of this document, exclusive of the Cover, the Table of Contents, the Page of Authorities, the Signatures, Certificates of Service, Compliance and Privacy Redactions contains less than 5,900 words, including footnotes, endnotes, and text boxes.

I understand that material misrepresentation can result in the Court striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the Brief and/or copy of the word or line printout.

Dated: August 4, 2026

/s/Marti L. Jones
Stowell Crayk, PLLC
4252 S. 700 E.
Millcreek, UT 84107
T: 385 528 1038
F: 801 483 0705
marti@lawscb.com

# CERTIFICATE OF SERVICE, PRIVACY REDACTIONS, AND VIRUS SCAN

I HEREBY CERTIFY that a true and correct copy of the foregoing

PLAINTIFFS/APPELLANTS' SUPPLEMENTAL BRIEF FOR PANEL REHEARING

was served on August 4, 2026, via CM/ECF, to the following:

ANEESA AHMED; Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 451-7744

Aneesa.Ahmed@usdoj.gov

katelyn.masetta.alvarez@usdoj.gov

Joshua.C.McCroskey@usdoj.gov

All required privacy redactions were done.

I further certify that this document was virus-scanned by FILEVINE's most

recent virus scan as a part of counsels' subscription, and is virus free.

Dated: August 4, 2026

/s/Marti L. Jones
Stowell Crayk, PLLC
4252 S. 700 E.
Millcreek, UT 84107
T: 385 528 1038
F: 801 483 0705
marti@lawscb.com