**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 5, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AGNES MUKANTAGARA;
EBENEZER SHYAKA,

Plaintiffs - Appellants,

v.

No. 24-4071

MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; MICHAEL CRABTREE, USCIS Field Office Director, Salt Lake City; EVA RUPP, USCIS District Office Director, Denver; JOSEPH B. EDLOW, Director,

Defendants - Appellees.

------------------------------

INTERNATIONAL REFUGEE ASSISTANCE PROJECT,

Amicus Curiae.

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:20-CV-00897-RJS)**

---

Daniel R. Black (Marti L. Jones with him on the briefs), of Stowell Crayk, PLLC, Salt Lake City, Utah, for Plaintiffs-Appellants.

Aneesa Ahmed, Trial Attorney (Yaakov Roth, Acting Assistant Attorney General; August E. Flentje, Acting Director; William C. Silvis, Assistant Director; Katelyn Masetta-Alvarez, Senior Litigation Counsel; and Joshua C. McCroskey, Trial Attorney, with her on the brief), Department of Justice, Washington, District of Columbia, for Defendants-Appellees.

---

Before **TYMKOVICH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

---

**PHILLIPS**, Circuit Judge.

---

Agnes Mukantagara and her son Ebenezer Shyaka sued United States Citizenship and Immigration Services in federal district court for terminating Mukantagara's refugee status. The court dismissed their suit for lack of subject-matter jurisdiction. It relied on 8 U.S.C. § 1252(a)(2)(B)(ii), which bars courts from reviewing immigration agencies' discretionary actions. It held that § 1252(a)(2)(B)(ii) applied to 8 U.S.C. § 1157(c)(4), the Immigration and Nationality Act's provision for terminating refugee status.

We held that 8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to Mukantagara and her son's suit. *See Mukantagara v. Noem*, 164 F.4th 765 (10th Cir. 2026), *vacated by Mukantagara v. Mullin*, 181 F.4th 1088 (10th Cir. 2026). We reasoned that the action Mukantagara and her son challenged was not discretionary, though a related action was. *See id.* The government moved for rehearing, and soon after, the Supreme Court issued its decision in *Mullin v. Doe*, 146 S. Ct. 2121 (2026). *Doe* seemed relevant, so we vacated our opinion

and asked the parties to brief us on it. With that briefing and argument, we've landed about where we started.

Section 1252(a)(2)(B)(ii) doesn't bar district court review of USCIS's termination of refugee status. *Doe*'s careful consideration of the words "determination" and "decision" has refined our analysis, but it doesn't substantially change it. Termination of refugee status under § 1157(c)(4) involves two decisions. The first is a mandatory, nondiscretionary decision—whether an alien met the INA's definition of "refugee" when admitted into the U.S. The second is an exercise of discretion—the agency may choose to maintain an alien's refugee status *even if* that person didn't meet the INA's definition of refugee when admitted into the country. Because Mukantagara and her son challenge only the first decision, which is nondiscretionary, § 1252(a)(2)(B)(ii) does not apply. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse judgment in favor of the government and remand to the district court for further proceedings.

## BACKGROUND

### I. Factual Background

In 2005, USCIS admitted Agnes Mukantagara as a refugee and her son Ebenezer Shyaka as her minor dependent. Two years later, it paused Mukantagara's refugee status and revoked her travel documents. By 2008, it

had begun investigating whether Mukantagara had participated in the Rwandan genocide. In 2016, it decided that she had.

For this, USCIS terminated Mukantagara's refugee status under 8 U.S.C. § 1157(c)(4). That provision lets the agency terminate a person's refugee status if it finds that the person did not meet the INA's definition of "refugee" when admitted into the United States. The agency found that Mukantagara had participated in the genocide, so she fell under the "persecutor bar," meaning she didn't qualify as a refugee. App. vol. I at 81; *see* 8 U.S.C. § 1101(a)(42). The government then placed Mukantagara and her son into removal proceedings.

Mukantagara denied that she participated in the genocide. She claimed that USCIS parroted false allegations from a politically motivated organization acting on behalf of Rwanda's ruling party.

In removal proceedings, the immigration court found Mukantagara credible and granted her asylum. It also ruled that it couldn't review USCIS's termination of Mukantagara's refugee status.

But the immigration court denied asylum to Mukantagara's son, Shyaka. It ruled that Shyaka neither independently qualified for asylum nor qualified as Mukantagara's dependent, even though he had qualified as her dependent when she received refugee status. That's because back in 2005, Shyaka was not yet twenty-one. By the time Mukantagara applied for asylum in removal proceedings—more than ten years later—Shyaka had aged out of eligibility.

The parties appealed to the Board of Immigration Appeals. The BIA remanded the immigration court's decision granting asylum to Mukantagara and affirmed the decision denying asylum to Shyaka. On remand, the immigration court again granted Mukantagara asylum. For his part, Shyaka petitioned for review before this Court. The BIA abated the government's appeal of the immigration court's second grant of asylum to Mukantagara, and we abated Shyaka's petition for review, pending the outcome in this case.

## II. Procedural History

Mukantagara and her son sued USCIS in federal district court under the Administrative Procedure Act, challenging its decision to terminate Mukantagara's refugee status. *See Mukantagara v. DHS*, 67 F.4th 1113, 1115 (10th Cir. 2023). The government moved to dismiss for lack of subject-matter jurisdiction under 8 U.S.C. § 1252(b)(9), *see id.*, which channels judicial review of actions related to final removal orders to the courts of appeal, *see generally Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 483 (1999). The district court granted the government's motion. *Mukantagara v. DHS*, 67 F.4th at 1116. We reversed, holding that § 1252(b)(9) did not apply because USCIS's decision to terminate refugee status was not part of removal proceedings. *Id.*

On remand, USCIS again moved to dismiss. *Mukantagara v. Mayorkas*, 736 F. Supp. 3d 1117, 1122 (D. Utah 2024). In relevant part, USCIS argued that one of the INA's jurisdiction-stripping provisions, 8 U.S.C.

§ 1252(a)(2)(B)(ii), deprived the district court of subject-matter jurisdiction. *Id.* at 1122–23. The district court agreed. *Id.* at 1125–26. Mukantagara and her son appealed that order, arguing that § 1252(a)(2)(B)(ii) didn't apply to USCIS's termination of refugee status. Our now-vacated opinion agreed. *See Mukantagara v. Noem*, 164 F.4th 765.

After seeking several extensions, the government petitioned for review en banc. While we were considering the petition, the Supreme Court issued *Mullin v. Doe*, 146 S. Ct. 2121, which involved similar INA jurisdiction-stripping questions. So we vacated our first opinion, *see* 181 F.4th at 1089, invited supplemental briefing and argument on *Doe*, and arrived here.

**DISCUSSION**

We review de novo a district court's dismissal for lack of subject-matter jurisdiction. *Breeze Aviation Grp., Inc. v. Nat'l Mediation Bd.*, 104 F.4th 1211, 1217 (10th Cir. 2024). The party seeking the court's jurisdiction bears the burden of showing it exists. *Green v. Napolitano*, 627 F.3d 1341, 1344 (10th Cir. 2010).

To start, we presume that there is "judicial review of administrative action." *Dekovic v. Rubio*, 169 F.4th 1002, 1011 (10th Cir. 2026) (citation omitted).

We then ask whether 8 U.S.C. § 1252(a)(2)(B)(ii), one of the INA's jurisdiction-stripping provisions, applies to USCIS's termination of Mukantagara's refugee status under § 1157(c)(4). More precisely, the question

is whether it prohibits review of whether Mukantagara was not a refugee, as defined by the INA, when she was admitted into the country. To decide that, we consider the text of the jurisdiction-stripping provision, recent Supreme Court cases, and the government's several counterarguments.

## I. Section 1252(a)(2)(B)(ii) does not apply to § 1157(c)(4)'s mandatory, nondiscretionary threshold decision.

"Even when Congress expressly prohibits judicial review, we construe that prohibition narrowly." *Teva Pharms. USA, Inc. v. Kennedy*, No. 25-5425, 2026 WL 2409591, at *7 (D.C. Cir. Aug. 18, 2026) (citation modified). The INA strips jurisdiction from courts to review "(i) any judgment regarding" five listed kinds of immigration relief and "(ii) any other decision or action [of USCIS] the authority for which is specified under this subchapter to be in the discretion of [USCIS]." 8 U.S.C. § 1252(a)(2)(B).

So was USCIS's finding that Mukantagara wasn't a refugee at the time of her admission a "decision or action" "specified . . . to be in the discretion of" USCIS? *See id.*

It wasn't. Start with the words in § 1157(c)(4). *See Smith v. Bd. of Governors of Fed. Rsrv. Sys.*, 73 F.4th 815, 820 (10th Cir. 2023). That provision says:

> The refugee status of any alien (and of the spouse or child of the alien) may be terminated by the Attorney General pursuant to such regulations as the Attorney General may prescribe if the Attorney General determines that the alien was not in fact a refugee within the meaning of section 1101(a)(42) of this title at the time of the alien's admission.

As we read it, termination of refugee status involves two separate decisions. First, USCIS decides whether "the alien was not in fact a refugee [under 8 U.S.C. § 1101(a)(42)] at the time of the alien's admission." 8 U.S.C. § 1157(c)(4). And we agree with practically every other circuit court to interpret this provision that this threshold decision is mandatory. *See Maiwand v. Gonzales*, 501 F.3d 101, 106 (2d Cir. 2007) ("Refugee status may be terminated *only if* . . . [the] alien did not qualify as a refugee at the time of entry." (emphasis added)); *Kaganovich v. Gonzales*, 470 F.3d 894, 898 (9th Cir. 2006) (similar); *Romanishyn v. Att'y Gen. of U.S.*, 455 F.3d 175, 181–82 (3d Cir. 2006) (similar). USCIS can't terminate refugee status if it doesn't make this decision.

Second, USCIS has discretion to maintain the refugee status of a person who wasn't a refugee when admitted into the U.S.—as in, the statute lets USCIS *not* terminate an otherwise eligible person's refugee status.[1]

Now, we ask whether either of these decisions is a "decision or action [of USCIS] the authority for which is specified under this subchapter to be in the discretion of [USCIS]." 8 U.S.C. § 1252(a)(2)(B)(ii). This provision clearly bars review of USCIS's second decision, a discretionary one.

[1] USCIS has removed this discretion by regulation, *see* 8 C.F.R. § 207.9, but that doesn't matter here because the jurisdiction-stripping provision applies "only when the statute itself" specifies that an action is discretionary. *See Kucana v. Holder*, 558 U.S. 233, 243–45 (2010).

But Mukantagara and her son challenged the first decision: they argued that USCIS flubbed the analysis because they *were* refugees as defined by the INA when admitted into the U.S.

And the review bar doesn't apply to this decision, because it was nondiscretionary. We decide "whether a particular decision is discretionary or non-discretionary . . . on a case-by-case basis." *See Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1115 (10th Cir. 2012) (citation omitted), *abrogated by Patel v. Garland*, 596 U.S. 328 (2022). A decision is likely the latter when "there is a clear standard . . . for which no evaluation of non-discretionary criteria is required." *Id.* (citation omitted); *see also Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23–24 (2018) (denying that decision was "committed to agency discretion by law," because the decision required the agency to "justify its determination *under a standard set forth in the statute*") (emphasis added).

Section 1157(c)(4) sets forth a clear standard: whether "the alien was not in fact a refugee within the meaning of [§] 1101(a)(42) of this title at the time of the alien's admission." So because the relevant decision isn't one within USCIS's discretion, § 1252(a)(2)(B)(ii) doesn't prohibit courts from reviewing it.

And we're unconvinced by the government's arguments otherwise. First, it argues that all decisions under § 1157(c)(4) are discretionary because the provision uses several phrases that suggest discretion: "may prescribe," "may

be terminated," and "if the [agency] determines." It also notes that the provision does not contain words like "shall."

But we read sentences "as a whole." *See Harbison v. Bell*, 556 U.S. 180, 196 (2009) (Roberts, C.J., concurring). The government's first two phrases don't relate to USCIS's threshold decision. "[M]ay prescribe" refers to the agency's power to pass regulations relating to the statute. 8 U.S.C. § 1157(c)(4). "May be terminated" gives the agency authority for its later decision—whether it will *not* terminate status even though it could. *Id.*

And we reject that the words "if the [agency] determines" reveal discretion. Even the government concedes that when terminating refugee status, USCIS "*must* 'choose' or 'decide'" the threshold question. *See* Resp. Br. at 19 (emphasis added). It has not argued that USCIS could forego the first decision when deciding to terminate a person's refugee status.

The government's remaining arguments concern Supreme Court decisions, which we address case-by-case.

## II. *Patel* does not apply here.

The government argues that *Patel v. Garland* prevents district courts from reviewing USCIS's first-step decisions. It argues that § 1252(a)(2)(B)(ii) precludes review of nondiscretionary threshold eligibility decisions if the agency exercises discretion in a later step of the same determination. But *Patel* interpreted § 1252(a)(2)(B)(i)'s text, which differs from that at issue here.

In *Patel*, the Supreme Court held that § 1252(a)(2)(B)(i) bars review of an immigration court's factual findings regarding non-refugee adjustment of status. *See* 596 U.S. at 347. While in removal proceedings, Patel had applied for non-refugee adjustment of status. *Id.* at 334. The immigration court concluded that Patel was ineligible to adjust because he had lied about his immigration status by marking that he was a citizen on a form for a driver's license. *Id.* at 334–35. Patel argued that he had made an honest mistake. *Id.* But the immigration court found that Patel was not credible. *Id.* So it denied Patel's application to adjust status, then ordered him removed. *Id.*

Patel appealed the immigration court's ruling to the Eleventh Circuit. That court held that § 1252(a)(2)(B)(i) removed its jurisdiction to review the immigration court's factual findings. *Patel v. Att'y Gen. of U.S.*, 971 F.3d 1258, 1272–73, 1283 (11th Cir. 2020) (en banc). That decision was based on the text of § 1252(a)(2)(B)(i), which bars review of "any judgment regarding the granting of relief" for five listed kinds of relief, including that relief Patel sought: non-refugee adjustment of status. *See id.* at 1273. The Eleventh Circuit held that the immigration court's credibility finding was a "judgment regarding the granting of relief." *Id.* The Supreme Court affirmed. 596 U.S. at 331.

But *Patel* doesn't dictate our interpretation of § 1252(a)(2)(B)(ii) because its holding rests on words particular to § 1252(a)(2)(B)(i)—"any judgment" and "regarding the granting of relief." 596 U.S. at 337–39. The Court interpreted "any judgment" to mean "judgments of whatever kind . . . not just discretionary

judgments or the last-in-time judgments." *Id.* at 338–39 (citation modified). It interpreted the phrase "regarding the granting of relief" as "broadening" § 1252(a)(2)(B)(i) to cover eligibility decisions. *Id.* at 338–39 (citation omitted).

We follow the "cardinal principle" giving effect "to every clause and word of a statute." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019). Section 1252(a)(2)(B)(ii) uses neither "judgment" nor "regarding the granting of relief." Instead of "judgment," which *Patel* defined as an "authoritative decision," it uses "decision or action," both of which suggest discrete steps—including not-so-authoritative ones. 596 U.S. at 337. And instead of "regarding the granting of relief," it uses the phrase "specified . . . to be in the [agency's] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Putting the two together, we read the provision as applying to all decisions or actions that are also specified to be in the agency's discretion. As in, it applies to discretionary decisions.

This is entirely in line with *Patel*, which held that "regarding" broadens § 1252(a)(2)(B)(i) to reach judgments "*relating to* the granting of relief." 596 U.S. at 339. To the contrary, "specified" narrows § 1252(a)(2)(B)(ii) to reach only actions and decisions involving discretion.

The government argues that both § 1252(a)(2)(B) subsections travel together. First, it spotlights the word "other." Because § 1252(a)(2)(B)(ii) says "any *other* decision or action" (emphasis added), the government argues, it

must have the same scope as § 1252(a)(2)(B)(i). We agree that "any other" means that subsection (ii) applies to similar sorts of immigration determinations as the five listed kinds of relief mentioned in subsection (i). For example, subsection (i) expressly applies to non-refugee adjustment of status (§ 1255). And because subsection (ii) applies to *other* decisions or actions, it applies to refugee adjustment of status (§ 1159), which is not listed in subsection (i). *See Hosseini v. Johnson*, 826 F.3d 354, 358–59 (6th Cir. 2016); *Fofana v. Noem*, 163 F.4th 1135, 1139 (8th Cir. 2026), *appeal for cert. docketed 25-1154*. But that's *all* "any other" does. To think otherwise would require us to ignore Congress's choice of "regarding" and "judgment" in subsection (i) and its choice of "action," "decision," and "specified" in subsection (ii).

The government next points to *Kucana v. Holder*, which mentions that § 1252(a)(2)(B)(i) "is instructive in determining the meaning of the [§ 1252(a)(2)(B)(ii)] catchall." 558 U.S. 233, 247 (2010). But *Kucana* included this only to show that (B)(ii) applies to provisions in which Congress gives immigration agencies "discretionary authority in the statute." *Id.* And *Kucana* later warns that when "Congress includes particular language in one section . . . but omits it in another section of the same Act," we should presume that Congress acted "intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 249. As in, we should presume that Congress had a reason for

using "regarding" and "judgment" in (B)(i) and "decision or action" and "specified" in (B)(ii).

Similarly, the Court has cautioned that when two neighboring provisions "contain distinct language," those provisions don't "necessarily travel together." *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 n.3 (2023). The government argues that *Slack Technologies* is inapplicable because it concerned provisions that were in separate sections, while the provisions here are part of the same subsection. But closer proximity further suggests different meaning.

Next, the government says that our reading of § 1252(a)(2)(B)(ii) creates a circuit split with the three other courts to have decided this issue. We don't feel as lonely as the government suggests we should be. *See Alzaben v. Garland*, 66 F.4th 1, 6 (1st Cir. 2023) (*Patel's* interpretation of "any judgment" in § 1252(a)(2)(B)(i) "does not directly address the scope" of § 1252(a)(2)(B)(ii)); *see also Ortez v. USCIS*, 169 F.4th 269, 273 (4th Cir. 2026) (allowing district court's APA review of USCIS's "legal interpretation of the statute" that resulted in denial of discretionary relief). Plus, after *Patel*, the Eleventh Circuit reiterated that district courts may review "a non-discretionary determination that is a statutory predicate to [an agency's] exercise of discretion." *See Bouarfa v. Sec'y DHS*, 75 F.4th 1157, 1163 (11th Cir. 2023) (citing *Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1143 (11th Cir. 2009)).

That said, the government is correct that some circuits have applied *Patel*'s rationale root and branch to § 1252(a)(2)(B)(ii). In *Fofana*, the Eighth

Circuit held as much because "[c]lause (ii) is not narrower [than clause (i)]; it is just phrased differently." 163 F.4th at 1139. And sure, we could imagine that "perhaps to stave off . . . boredom," "Congress may . . . engage in elegant variation—adopting different language to mean the same thing," but this shouldn't be our go-to interpretative framework. *See Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1021 (9th Cir. 2017) (citation modified) (Bybee, J., dubitante).

*Fofana* goes on to reason, "[a]s with clause (i), if Congress intended to limit the jurisdictional bar in clause (ii) to *discretionary decisions*, then it could easily have used that language." 163 F.4th at 1139 (citation modified) (emphasis added). But because we think "decision . . . specified . . . to be in the discretion" of USCIS means *exactly* that, we respectfully disagree with *Fofana*.

Similarly, in *Shaiban v. Jaddou*, the Fourth Circuit was "unable to identify any basis for concluding that *Patel*'s broad construction of clause (i) should not equally apply to clause (ii)." 97 F.4th 263, 267 (4th Cir. 2024); *see also Zia v. Garland*, 112 F.4th 1194 (9th Cir. 2024) (reaching same conclusion). But we see two: First, clause (ii) uses "decision or action" instead of clause (i)'s "judgment"; second, clause (ii) uses "specified" instead of clause (i)'s "regarding." Plus, in *Ortez*, the Fourth Circuit narrowed *Shaiban*'s holding to permit "inherently legal questions about the applicability of statutes." 169 F.4th at 273. And Mukantagara and her son's question is whether "the alien was not in fact a refugee within the meaning of [§] 1101(a)(42)," as

in, whether USCIS correctly applied a statute. *See* § 1157(c)(4). So *Shaiban* hasn't convinced us to change course either.

We acknowledge that this is a split, and we respectfully disagree with our colleagues in the Fourth, Eighth, and Ninth Circuits. Because we interpret § 1252(a)(2)(B)(ii) based on what Congress said, and not what it may have meant to the contrary, *see* Antonin Scalia, *A Matter of Interpretation* 17–18 (Amy Gutmann ed., 1997), we think we have the better read of the statute.

That said, there's also a way to read *Fofana*, *Zia*, and *Shaiban* in tandem with our decision here. In each of those cases, USCIS could have exercised its discretion to deny the immigration benefit sought by the alien. USCIS could have said, "you might be eligible for this benefit, but we're denying you relief anyway as a matter of discretion." Here, only if USCIS first answered the non-discretionary question in the negative, could it then exercise its discretion to remove a benefit: it couldn't have said, "you might have been an INA-defined refugee when you were admitted, but we're removing your status anyway." Like we said, we disagree with *Fofana*, *Zia*, and *Shaiban*, but this route to distinguish them also exists.

### III. *Bouarfa* does not apply to § 1157(c)(4).

The government also argues that the Supreme Court's decision in *Bouarfa* requires holding that § 1252(a)(2)(B)(ii) bars review here.

In *Bouarfa*, the Court held that § 1252(a)(2)(B)(ii) bars a district court from reviewing USCIS's decision to revoke a visa under § 1155. 604 U.S. at 9.

Section 1155 says that USCIS "may, at any time, for what [it] deems to be good and sufficient cause" revoke an approved visa petition. The Court called this language "a quintessential grant of discretion." *Bouarfa*, 604 U.S. at 13; *see also Hamilton v. Gonzales*, 485 F.3d 564, 568 (10th Cir. 2007) (holding the same); *Green*, 627 F.3d at 1343 (same).

But *Bouarfa* distinguished § 1155 from provisions in the INA with mandatory, nondiscretionary decisions. The Court pointed out that the standard in § 1155—"good and sufficient cause"—imposes "no conditions that the [agency] must satisfy" before revoking an approved visa. *Bouarfa*, 604 U.S. at 14. It distinguished non-refugee adjustment of status—the procedure at issue in *Patel*—from § 1155, which "has no threshold requirements." *Id.* at 19. And the Court declined to "resolve whether § 1252(a)(2)(B)(ii) strips . . . jurisdiction to review threshold determinations." *Id.*

So we read *Bouarfa* as saying that "good and sufficient cause" is a discretionary standard that courts can't review. Not so for the standard here: whether an "alien was not in fact a refugee within the meaning of [§] 1101(a)(42) of this title at the time of the alien's admission." *See* § 1157(c)(4). This is the sort of standard courts are expected to review, and this suffices to distinguish *Bouarfa*.

## IV. *Doe* does not apply.

We vacated our previous opinion because at first glance, *Mullin v. Doe* seemed to undermine its holding. 146 S. Ct. 2121 (2026). After considering supplemental briefing and oral argument, we don't think it does.

In *Doe*, recipients of Temporary Protected Status sued the Secretary of Homeland Security under the APA for removing their home countries' TPS designations. *See id.* at 2131, 2133. The TPS statute contains a jurisdiction-stripping provision, 8 U.S.C. § 1254a(b)(5)(A), which says that "[t]here is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection."

The TPS recipients conceded that the jurisdiction-stripping provision prevented them from challenging the Secretary's ultimate discretionary choice to cancel a country's TPS. *See Doe*, 146 S. Ct. at 2136. They argued that they could still challenge the Secretary's failure to carry out an earlier step: consulting with appropriate agencies about country conditions. *Id.*

The Supreme Court disagreed. First, it zoomed in on the statute's use of "determination." *Id.* at 2133–34. It explained that in the relevant statute, there are two possible usages of "determination." *Id.* at 2133. One is "a synonym for 'decision.'" *Id.* (citation omitted). The other could "be used to describe the chain of events leading up to a decision." *Id.* The Court held that whichever of these definitions applied, the phrase "with respect to" meant that the provision

covered the "chain of events." *Id.* That's because "with respect to" broadened the scope in the same way "regarding" broadened "judgment" in *Patel*. *Id.* at 2133–34. So under either definition, the jurisdiction-stripping provision precluded judicial review of *any* component decision of canceling a country's TPS.

So far, so good. This resembles the analysis from *Patel*. And our response is similar. Section 1252(a)(2)(B)(ii) uses "decision or action" instead of "determination." Those words align with the *Doe* majority's narrower definition of "determination"—the one that isn't a "chain of events." *Id.* at 2133. And again, § 1252(a)(2)(B)(ii) says "specified" instead of *Patel*'s "regarding" or *Doe*'s "with respect to," *see* 146 S. Ct. at 2133. This key "textual signal" tells us that even though § 1252(a)(2)(B)(ii) uses the words "any other," its scope is more limited than provisions which use "with respect to" or "regarding." *See Teva Pharms.*, 2026 WL 2409591, at *9 (distinguishing *Doe* in part because the relevant review bar lacked language resembling "with respect to").

But *Doe* goes on to prompt a different challenge from the government. Later, when responding to the dissent, the majority wrote, "[i]n APA cases, an agency's subsidiary decisions merge into the final agency action, which is then subject to review. . . . If the final agency action is unreviewable, then so too are subsidiary determinations." *Doe*, 146 S. Ct. at 2136.

On its face, this language seems to pose a problem for Mukantagara and her son. Indeed, while they attempt to distinguish *Doe* by noting that § 1157(c)(4) establishes a "mandatory, nondiscretionary predicate," Appellants' Spml. Br. at 22, § 1254a(b) imposes a *series* of mandatory and nondiscretionary predicates. It is uncontested that the Secretary must "complete four steps to terminate a TPS designation: (1) consult with appropriate agencies about the country's conditions, (2) review those conditions, (3) determine whether those conditions are still bad enough to meet the statutory criteria, and (4) publish a notice in the Federal Register. All agree those steps are mandatory." *Doe*, 146 S. Ct. at 2145 (Kagan, J., dissenting). Thus, the mere presence of a mandatory and nondiscretionary predicate cannot, by itself, be what separates this case from *Doe*.

The relevant distinction, however, is not whether a predicate is mandatory; rather, it is the relationship that the predicate shares with the grant of discretionary authority. A mandatory determination may be subsidiary to an otherwise discretionary decision when the determination itself constitutes part of the judgment that Congress entrusted to the agency. *Cf. Heckler v. Chaney*, 470 U.S. 821, 832–33 (1985) (treating decisions traditionally committed by Congress to agency discretion as unreviewable). Or it may be preliminary to that decision when it answers a separate question that must be resolved prior to the exercise of discretionary authority. *Cf. Wilkinson*, 601 U.S. at 217–18

(separating satisfaction of eligibility criteria from discretionary cancelation of removal).

The mandatory steps for TPS termination are properly understood as subsidiary. The country conditions determination is an evaluative, forward-looking judgment premised on the satisfaction of the statutory criteria for a continuing TPS designation. *See Doe*, 146 S. Ct. at 2129–30. That inquiry is integral to the termination scheme itself—the Secretary must engage in consultations and assess current conditions to determine whether to exercise the statutory discretion to make a change in designation. *See id.* at 2145 (Kagan, J., dissenting). Although the statute requires the Secretary to make that determination while following specific steps, all those steps exist as part of the same exercise of judgment that Congress committed to the Secretary.

The refugee determination required by § 1157(c)(4), in contrast, is preliminary to the Attorney General's exercise of discretion. Section 1157(c)(4) does not ask the Attorney General to evaluate whether changing circumstances warrant termination of a status that concededly applies. Instead, it requires the Attorney General to determine whether the noncitizen "was not in fact a refugee" under § 1101(a)(42) "at the time of" admission. That inquiry applies a fixed statutory definition that exists outside of the discretionary scheme to a specific question about prior eligibility. Only after that question is answered, and only if it is answered in the negative, does the statute authorize the Attorney General to choose whether to terminate refugee status. *Cf. INS v.*

*Cardoza-Fonseca*, 480 U.S. 421, 427–28 (1987) (distinguishing legal question of refugee status from Attorney General's separate discretion to grant relief after establishment of eligibility). If the Attorney General determines that the noncitizen was in fact a refugee under § 1101(a)(42) at the time of admission, the inquiry is completed and there is no discretionary decision to make.

The pertinent distinction is thus between mandatory predicates that are subsidiary to the exercise of discretion and mandatory predicates that are preliminary to the exercise of discretion. The former are inseparable from the discretionary judgment because they constitute part of the authority that Congress entrusted to the agency. *Cf. Doe*, 146 S. Ct. at 2136. The latter are distinct because they determine whether that agency may exercise its judgment in the first place. They are not merely "advisory," nor do they fail to "mark[] the consummation" of the decisionmaking process. *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). Rather, they are antecedent to the process itself.

We further clarify, in response to the dissent, that we use the term "preliminary" not to delineate a final or independently reviewable action under the APA, but to describe the relationship of that mandatory predicate and the Attorney General's discretionary authority. In our view, the relevant question here is not whether the refugee determination merges into the final termination decision, *see Sackett v. EPA*, 566 U.S. 120, 126–27 (2012), but whether Congress committed the refugee determination itself to the Attorney General's

discretion.[2] That is because the Attorney General is barred from exercising the discretion conferred by § 1157(c)(4) *unless* he first determines that the alien was not a refugee at the time of admission. That fact guides our result.

To be sure, a mandatory determination may sometimes be subsidiary to an otherwise unreviewable agency action. *See Doe*, 146 S. Ct. at 2136. But *Doe* does not establish that *every* mandatory determination is subsidiary and thus unreviewable. Further, in instances where an antecedent determination requires application of a statutory provision independent of the discretionary scheme, treating the application of that provision as unreviewable would insulate from review a decision Congress did not actually commit to its discretion. *See Kucana*, 558 U.S. at 246–47 (explaining that § 1252(a)(2)(B)(ii) only applies where particular legislation specifies that the relevant authority is discretionary). Simply put, that cannot be Congress's intended result. *See La.*

[2] Seemingly, a determination that an individual was not a refugee at the time of admission cannot satisfy the finality requirement, as the Attorney General is free to decide *against* terminating refugee status after making such a finding. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (noting that a final agency action must mark the "consummation of the agency's decisionmaking process" and be "an action from which legal consequences will flow" (internal quotation marks omitted)). In turn, the predicate question of refugee status would likely be final if it is answered affirmatively, as that finding would end any further inquiry. But procedural merger under the APA, while perhaps determinative as to reviewability, does not by itself establish that Congress intended to extend the Attorney General's discretion to the predicate question of whether the noncitizen was a refugee, as defined by statute, at the time of admission. In short, finality controls when a party can appeal. Here, we decide what a party can appeal.

*Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it."). This distinction is well founded. In *Wilkinson*, the Supreme Court similarly distinguished a statutory eligibility determination from the subsequent exercise of removal-related discretion. 601 U.S. at 217–18. Of course, the dissent is correct that *Wilkinson* does not control here, and we do not mean to imply otherwise. The dissent is also right that both the present case and *Wilkinson* reference independent jurisdictional provisions and that different jurisdictional provisions are generally subject to different legal interpretations—indeed, this was our first explanation for why *Doe* does not dictate the present result. *See* Majority Op. at 19. We only cite *Wilkinson* for its recognition of a statutory eligibility inquiry that is analytically distinct from a subsequent exercise of discretionary authority. The point is this: although § 1252(a)(2)(B)(ii)'s reference to a "decision or action" is broader than § 1252(a)(2)(B)(i)'s reference to a "judgment regarding the granting of relief," *see Wilkinson*, 601 U.S. at 220–21, that difference does not address the separate requirement under § 1252(a)(2)(B)(ii) that the right to exercise discretion in making any decision or action must be specified by statute. Under that section, unlike § 1252(a)(2)(B)(i) at issue in *Wilkinson*, we must answer both whether the

challenged matter is a decision or action, and whether Congress committed the authority for that decision or action to agency discretion.

To be sure, the dissent offers another plausible reading of §1252(a)(2)(B)(ii). In instances where "a statutory provision is reasonably susceptible to divergent interpretation, however, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (internal quotation marks omitted). Although there are some similarities between the mandatory predicate at issue here and the ones at issue in *Doe*, we are tasked with giving effect to the differences—specifically the divergent statutory language and the preliminary or subsidiary nature of that mandatory decision.

## V. The government's other cases do not apply.

The government also cites recent cases applying § 1252(a)(2)(B)(ii) in arguing that it should apply here. These cases concern USCIS's discretion to implement regulations for processing adjustment-of-status applications. *See Geda v. Dir. USCIS*, 126 F.4th 835, 843 (3d Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024); *Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024). This is a distinct legal issue that's inapplicable here.

*     *     *

We hold that terminating refugee status under 8 U.S.C. § 1157(c)(4) is a two-step process, and the first step is mandatory and nondiscretionary. Because

of that, § 1252(a)(2)(B)(ii) does not bar review of USCIS's finding that a noncitizen did not meet the definition of refugee at time of admission under § 1157(c)(4). We do not rule on the arguments that the district court declined to consider.

## CONCLUSION

We reverse the district court's order and remand for further proceedings.

24-4071, *Mukantagara v. Mullin*

**TYMKOVICH**, Circuit Judge, dissenting.

Our original panel decision decided that Congress did not strip judicial review of USCIS's determination that a refugee was in fact not a refugee at the time of his admission. The Supreme Court's intervening decision in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), makes our original position untenable. Because the majority underestimates *Doe*'s impact on this case, I respectfully dissent.

By statute, no court has jurisdiction to review "any . . . decision or action . . . the authority for which is specified . . . to be in the discretion of [USCIS]." 8 U.S.C. § 1252(a)(2)(B)(ii). No one disputes that the statute blocks judicial review of USCIS's discretionary decision to terminate an alien's refugee status if the agency determines he was not a refugee at the time of his admission. *See* 8 U.S.C. § 1157(c)(4) (providing that an alien's refugee status "may be terminated" by USCIS if he was not a refugee at the time of his admission).[1] Instead, the parties dispute whether the statute strips review of USCIS's subsidiary decision that an "alien was not in fact a refugee" when admitted. *Doe* tells us it does.

*Doe* explained that a similar judicial-review bar covered an agency's ultimate decision *and* the subsidiary decisions leading to it. The statute at issue in *Doe*

[1] By regulation, USCIS must terminate an alien's refugee status if he was not a refugee at the time of his admission. 8 C.F.R. § 207.9. The regulation has thus made mandatory a decision that is discretionary by statute. But as the majority points out, what matters for § 1252(a)(2)(B)(ii) is that the termination decision is discretionary *by statute*. *See Kucana v. Holder*, 558 U.S. 233, 246 (2010).

blocked review of "any determination of the [Secretary of Homeland Security] with respect to . . . [the] termination . . . of a designation" of Temporary Protected Status for a foreign state. 8 U.S.C. § 1254a(b)(5)(A). The Court held the statute blocked review of the Secretary's decision to terminate a country's TPS designation and the Secretary's subsidiary decisions leading to the termination—specifically, the Secretary's decision "to consult the State Department in a particular manner" and the decision "that country conditions in Syria and Haiti justified termination of their TPS designations." *Doe*, 146 S. Ct. at 2134. The Court offered two independent grounds for that holding. First, relying on the term's plain meaning, the Court interpreted "determination" as including ultimate and subsidiary decisions. *Id.* at 2133–34. Second, the Court said that in APA cases subsidiary decisions merge into the final agency action, and if that final action is not reviewable, neither are the subsidiary decisions. *Id.* at 2136.

*Doe*'s logic applies here. Section 1252(a)(2)(B)(ii) bars review of any "decision," and that term's plain meaning covers both an ultimate decision ("the act . . . of deciding") *and* the "process of deciding"—*i.e.*, any subsidiary decisions. *Decision*, Merriam-Webster.com (def. 1.a), https://www.merriam-webster.com/dictionary/decision (last visited Sep. 2, 2026). And just as in *Doe*, USCIS's subsidiary determination that Mukantagara was not a refugee at the time of

her admission was "part of the process that led to" USCIS's ultimate decision to terminate her refugee status. *Doe*, 146 S. Ct. at 2134.[2]

Moreover, because Mukantagara and Shyaka bring an APA claim, USCIS's subsidiary determination that Mukantagara was not a refugee at the time of her admission "merge[s] into the final agency action." *Id.* at 2135. And though the parties dispute what the relevant final agency action is here—USCIS's termination of refugee status or a future removal order—neither would be reviewable in this APA case. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (termination decision); 8 U.S.C. § 1252(a)(5) (removal order). After *Doe*, neither is USCIS's determination that Mukantagara was not a refugee at the time of her admission.

But rather than accept that *Doe* controls the outcome here, the majority tries its hand at distinguishing the case. None of the majority's reasons are persuasive.

*First*, the majority asserts that *Doe* interpreted a different statutory term, "determination," and emphasizes that the Court outlined two definitions of that term: (1) a "narrower definition" that is a synonym for "decision"; and (2) a broader one that covers the "'chain of events leading up to a decision.'" Majority Op. at 18–19 (quoting *Doe*, 146 S. Ct. at 2133). And because § 1252(a)(2)(B)(ii) uses "decision,"

[2] It makes no difference that § 1252(a)(2)(B)(ii) omits the phrase "with respect to," which § 1254a(b)(5)(A) includes. *Doe* observed that *even if* "'determination' referred only to th[e] final decision," the phrase "with respect to" the final decision, would prevent judicial review of the subsidiary determinations in that case. *Doe*, 146 S. Ct. at 2134. But "decision" in § 1252(a)(2)(B)(ii) includes subsidiary decisions, so *Doe*'s alternative "with respect to" argument is unnecessary.

rather than "determination," the majority contends the review bar aligns with only *Doe*'s narrower definition—"the one that isn't a 'chain of events.'" *Id.* at 19.

But there is no meaningful difference between a "determination" and a "decision." The words are interchangeable in ordinary English. *Compare Determination*, Oxford English Dictionary (def. 2.b), https://doi.org/10.1093/OED/9409736944 (last visited Sep. 2, 2026) ("The *decision* arrived at or promulgated[.]" (emphasis added)); *with Decision*, Webster's Third New International Dictionary 585 (def. 1.b) (1986) ("[A] *determination* arrived at after consideration . . . ." (emphasis added)). And they were interchangeable to the *Doe* Court, too. *Doe*, 146 S. Ct. at 2133 (calling "determination" a "synonym" of "decision").

To be sure, *Doe* noted that "determination" can refer either to an ultimate decision itself or "the chain of events leading up to a decision." *Doe*, 146 S. Ct. at 2133. But as I explained, "decision" means those things, too. *See, e.g.*, *Decision*, Oxford English Dictionary (def. II.2.b), https://doi.org/10.1093/OED/8877690639 (last visited Sep. 2, 2026) ("The action, fact, or *process of arriving at a conclusion* . . . ." (emphasis added)). Indeed, the definitions of "determination" *Doe* used to make this point are remarkably similar to the definitions of "decision." *Compare Determination*, American Heritage Dictionary 359 (def. 1.a) (1981) ("The act of making *or arriving at a decision*[.]" (emphasis added)); *Determination*, Random House Dictionary of the English Language 541 (def. 1) (2d ed. 1987) ("The act of *coming to a decision* . . . ." (emphasis added)); *with Decision*, American

Heritage Dictionary (def. 2) (5th ed. 2022) ("The act of *reaching a conclusion* . . . ." (emphasis added)); *Decision*, Merriam-Webster.com (def. 1.a), https://www.merriam-webster.com/dictionary/decision (last visited Sep. 2, 2026) ("[T]he act or *process of deciding* . . . ." (emphasis added)). In short, a decision, like a determination, covers *both* the chain of events leading up to a decision (here, whether "the alien was not in fact a refugee") *and* the ultimate decision (termination of refugee status). 8 U.S.C. § 1252(a)(2)(B)(ii).

*Second*, the majority creates another distinction to sidestep *Doe*'s second ground for its holding. Recall that the Supreme Court said, "an agency's subsidiary decisions" under the APA "merge into the final agency action," and thus "[i]f the final agency action is unreviewable, then so too are subsidiary determinations." *Doe*, 146 S. Ct. at 2136. "This important principle ensures that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering." *Id.*

The majority, however, insists that the "predicate" inquiry here—whether the alien was not in fact a refugee at the time of his admission—is not a "subsidiary" determination under *Doe* because it is instead a "*preliminary*" one. Majority Op. at 20–21 (emphasis added). The majority explains that the predicate determinations in *Doe* (*e.g.*, the assessment of country conditions) were "subsidiary" to the agency's final discretionary decision (whether to terminate TPS status) because they were part of the process and "integral to the termination scheme itself." *Id.* But the majority asserts the predicate determination here is "preliminary" to USCIS's exercise of discretion because it is "distinct" and "antecedent to the process itself." *Id.* at 22.

And based on this distinction—*preliminary* rather than *subsidiary*—the majority concludes the "preliminary" determination here does not merge into the final status-termination decision.

I cannot agree. To me, the majority's subsidiary-preliminary distinction seems to be one without a difference. In any event, even with the majority's labeling there would be no meaningful difference between an agency's preliminary or subsidiary determination under the APA. Like the subsidiary decisions that *Doe* held unreviewable because they merged into the final review-barred decision, the "preliminary" determination here also merges into USCIS's final status-termination decision. This is because under the APA's general provision for judicial review, an agency's preliminary or subsidiary action merges into its final action, unless the preliminary action can *itself* qualify as a separate, reviewable final agency action.[3] *See* 5 U.S.C. § 704 ("A *preliminary*, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." (emphasis added)).

[3] A preliminary agency action might be subject to judicial review outside the APA's general review procedure if the substantive statute provides for such review. *See Wilkinson v. Garland*, 601 U.S. 209, 225 (2024). Section 1157, however, contains "no provision for judicial review." *Haitian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1506 (11th Cir. 1992). Therefore, the only potential avenue for judicial review of the agency's preliminary determination here would be if it were itself a "final agency action" under the APA. *See* 5 U.S.C. § 704. Neither party has argued this determination qualifies as a final agency action. *See* Aplt. Supp. Br. at 13 ("The termination of refugee status is final agency action." (internal quotation marks omitted)); Aple. Supp. Br. at 8 ("[T]he final agency action Appellants challenge is USCIS's discretionary determination to terminate her refugee status.").

But the predicate determination here under § 1157(c)(4) is *not* a final agency action since none of the "hallmarks of APA finality" emanate from the determination. *See Sackett v. EPA.*, 566 U.S. 120, 126 (2012). The agency's decision does not "determine[] rights or" impose any "legal obligation[s]" on the alien, nor does it "mark[] the consummation of the Agency's decisionmaking process." *See id.* at 126–27 (citation modified). In fact, as the majority points out, "the statute lets USCIS *not* terminate an otherwise eligible person's refugee status." Majority Op. at 8. So USCIS's determination of whether the alien "was not in fact a refugee" at the time of his admission cannot be the agency's final action under § 1157(c)(4); the agency's ultimate decision of whether to terminate his refugee status would be. Only then does the agency determine the alien's rights and consummate its decision-making process. *See* Aplt. Supp. Br. at 13–14 ("USCIS's termination is . . . the agency's last word . . . . [T]he termination action fixes rights and consequences at once[.]"). Rather, the preliminary determination here *is* a subsidiary one that—like in *Doe*—merges into the agency's discretionary status-termination decision because it is not itself a separate final agency action.

The majority nonetheless claims its "distinction is well founded" because the Supreme Court in *Wilkinson v. Garland*, 601 U.S. 209 (2024), "similarly distinguished a statutory eligibility determination from the subsequent exercise of removal-related discretion." Majority Op. at 23–24 (citing 601 U.S. at 217–18). But to start, nowhere in *Wilkinson* did the Supreme Court use the words "subsidiary" or

"preliminary," nor did it otherwise make the same distinction the majority now constructs. *See generally* 601 U.S. at 211–33. And the majority misses critical differences between the statutory scheme at issue in *Wilkinson* and the one here. In *Wilkinson*, the Court held an agency's underlying hardship determination was subject to review—even though the agency's ultimate discretionary decision was not—for two reasons. *First*, the provision at issue only barred review of "*judgment*[*s*] regarding the granting of [discretionary] relief under section . . . 1229b." 601 U.S. at 218 (alterations in original) (emphasis added) (quoting 8 U.S.C. § 1252(a)(2)(B)(i)). *Second*, even though the provision stripped review of that discretionary judgment, the statute at the same time "generally grant[ed] federal courts the power to review final orders of removal," *see* 8 U.S.C. § 1252(a)(1), and *explicitly* granted courts "jurisdiction to review 'constitutional claims or questions of law,'" *Wilkinson*, 601 U.S. at 218 (quoting 8 U.S.C. § 1252(a)(2)(D)). The Court therefore concluded the review bar simply "strips jurisdiction over judgments regarding discretionary relief," but did not bar review of the underlying hardship legal determination because the statute expressly "*restores* [jurisdiction] for legal questions." *Id.* (emphasis added).

But the provision here bars review of any *decision*—not judgment. *Cf.* Majority Op. at 12 ("Instead of 'judgment,' which *Patel* defined as an 'authoritative decision,' [§ 1252(a)(2)(B)(ii)] uses 'decision or action,' both of which suggest discrete steps—including not-so-authoritative ones."). As I explained, "decision" includes subsidiary determinations. *See Doe*, 146 S. Ct. at 2133–34. Moreover, neither § 1252(a)(1)'s general grant of judicial review, nor § 1252(a)(2)(D)'s express

restoration of review for legal questions, apply to the subsidiary determination here; those provisions only pertain to petitions for review of *removal* proceedings. *See* 8 U.S.C. § 1252(a)(1) (granting general "review of a final order of removal . . . ."); § 1252(a)(2)(D) (restoring review for legal questions "raised upon a petition for review . . . *in accordance with this section*" (emphasis added)). And Mukantagara's "challenge [to] USCIS's determination to terminate refugee status" is *not* a petition for review of removal proceedings. *Mukantagara v. DHS*, 67 F.4th 1113, 1116 (10th Cir. 2023). So unlike the statutory scheme in *Wilkinson*, § 1157 contains no independent judicial review provision that might restore jurisdiction to review USCIS's subsidiary not-in-fact-a-refugee determination. *See supra* n.3. Accordingly, *Wilkinson* does not support the majority's novel distinction.

With that conclusion in hand, I also readily conclude that the subsidiary decision here is "of the sort shielded from review" by the termination-of-refugee-status review bar. *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum. Servs.*, 830 F.3d 515, 518 (D.C. Cir. 2016) (Griffith, J.); *see also id.* at 518–19 (finding no jurisdiction over a challenge to the underlying data the HHS Secretary relied on to make her final "estimate" because the Affordable Care Act barred review of "any estimate of the Secretary," even though "the statute requires the Secretary to base her estimates on 'appropriate' data" (citation modified)). Whether an alien was not in fact a refugee at the time of his admission is "indispensable and integral to, and inextricably intertwined with," USCIS's decision to terminate the alien's refugee status—"the unreviewable agency action." *Id.* at 519 (citation modified). Indeed, the

subsidiary decision is "the entire basis for the" agency's ultimate termination decision. *Id.* "The bar on judicial review in [§ 1252(a)(2)(B)(ii)] therefore expressly precludes [Mukantagara's] challenge to the [subsidiary determination], and we lack jurisdiction to consider it." *Id.* (citation modified).

Alongside its attempts to distinguish *Doe*, the majority also insists that because the subsidiary decision is "mandatory"—in that "USCIS can't terminate refugee status if it doesn't" conclude "the alien did not qualify as a refugee at the time of entry"—§ 1157(c)(4) thus "involves two separate decisions": (1) a mandatory-threshold decision and (2) a final discretionary one. Majority Op. at 8 (citation modified). But that a subsidiary decision is "mandatory" does not require that it be separate from the ultimate determination. For example, in *Doe*, one of the challenged subsidiary decisions—that country conditions had so changed that TPS status was no longer justified—was also a mandatory, threshold decision that triggered termination. *See* 8 U.S.C. § 1254a(b)(3)(B) ("*If* the [Secretary] determines . . . that a foreign state . . . no longer continues to meet the conditions for designation under paragraph (1), the [Secretary] *shall terminate* the designation . . . ."). Yet *Doe* found that subsidiary determination unreviewable because it was part of the chain of events of the final decision, notwithstanding that it was a threshold determination for terminating TPS status. *See Doe*, 146 S. Ct. at 2134.

The majority counters that the statute in *Doe* barred review for any determination "with respect to" termination of a TPS designation, which "broadened the scope" of "determination" such that it also "covered the chain of events" leading

up to the final decision. Majority Op. at 18–19 (quotation marks omitted). But in the majority's view, § 1252(a)(2)(B)(ii) is narrower since it only bars decisions "specified" as discretionary. And the subsidiary decision here is thus not covered because it is *not* discretionary.[4]

But this argument matters only if you accept the majority's premise that the subsidiary decision is *not* part of the same final discretionary decision. And as I have explained, *Doe* requires the opposite. Moreover, like the statute in *Doe*, § 1252(a)(2)(B)(ii) states that "*any* other decision" that is discretionary under the statute is unreviewable. *Cf.* 8 U.S.C. § 1254a(b)(5)(A) ("*any* determination . . . ."

[4] The majority's primary basis for this conclusion is that we normally consider decisions for which "there is a clear standard" to be nondiscretionary and thus reviewable. Majority Op. at 9 (quoting *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1115 (10th Cir. 2012)). But as the majority notes, we decide whether a "particular decision is discretionary or non-discretionary on a case-by-case basis." *Id.* (citation modified) (quoting *Sosa-Valenzuela*, 692 F.3d at 1115). And here, though the statute provides a definition of "refugee," *see* 8 U.S.C. § 1101(42), a plain reading indicates that the definition is for *the agency* to utilize when making its discretionary determination of whether to terminate refugee status. This is because, as required by *Doe*, we must read the subsidiary decision to be part of the final decision.

The majority's other cited authority on the issue, *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23–24 (2018), is inapposite because that case dealt with the APA's narrow bar on judicial review of "agency action [that] is committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2); *Haitian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1507 (11th Cir. 1992) ("[Section 701(a)(2)] is applicable only when the statute granting agency discretion is so broad that it provides no law for courts to apply when reviewing the agency action." (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410 (1971))). APA § 701(a)(2)'s review bar, however, is not at issue here; Section 1252(a)(2)(B)(ii) independently bars review of USCIS decisions that are discretionary by statute.

(emphasis added)). "[T]he word 'any' has an expansive meaning."[5] *Patel v. Garland*, 596 U.S. 328, 338 (2022) (citation modified); *see also* Webster's Third New International Dictionary 97 (def. 1) (1986) (defining "any" as "one or some indiscriminately of whatever kind"). Congress's choice to expansively encompass discretionary decisions "of whatever kind" therefore aligns with my conclusion that *Doe*'s broad definition of determination—to include the process and chain of events leading up to a decision—is what governs.

Finally, I note that the practical effect of the majority's holding further motivates my dissent. By making USCIS's subsidiary decision subject to judicial review, the majority has effectively stripped the agency of its discretion to terminate an alien's refugee status. The agency can now terminate an alien's refugee status only if *a court* agrees with its subsidiary decision that the alien was not a refugee when he entered the country. But this level of judicial meddling was the exact impediment Congress sought to remove when it enacted § 1252(a)(2)(B)(ii). *See Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("Congress amended the INA aggressively to expedite removal of aliens lacking a legal basis to remain in the

---

[5] The majority briefly cites the D.C. Circuit's recent decision in *Teva Pharms. USA, Inc. v. Kennedy*, No. 25-5425 (D.C. Cir. Aug. 18, 2026), to note the panel there distinguished *Doe* "in part because [the] relevant review bar lacked language resembling 'with respect to[.]'" Majority Op. at 19 (citing 2026 WL 2409591, at *9). Yet the majority omits that the D.C. Circuit also relied on the fact that the relevant statute only barred review of "*the* determination," not "*any* determination" like the statute in *Doe* (and here). *Teva Pharms.*, 2026 WL 2409591, at *9. The D.C. Circuit explained that "'the determination' . . . describes a single, discrete act rather than a group of decisions or a practice or procedure employed in making decisions." *Id.* at *8 (citation modified).

United States. Among IIRIRA's several proscriptions of judicial review is the one here at issue, § 1252(a)(2)(B)(ii), barring review of administrative decisions Congress placed within the Attorney General's discretion." (citation omitted)). The majority's interpretation flies in the face of Congress's statutory scheme, which expressly makes USCIS's termination decision discretionary and shields it from judicial review. In effect, "[a] challenge to the [subsidiary decision here] would eviscerate the bar on judicial review." *Fla. Health Scis. Ctr.*, 830 F.3d at 519 (citation modified).

The majority nevertheless contends the agency still possesses *some* statutory discretion (putting aside the regulation) since it might decide to "*not* terminate an otherwise eligible person's refugee status." Majority Op. at 8. But the majority's attempt to salvage its interpretation strains reality. Federal agencies do not reinvestigate an alien's refugee status on a whim or for their own amusement. USCIS devotes significant time (here, eight years) and resources conducting such investigations to make its decisions. Yet under the majority's logic, the agency might initiate a lengthy reinvestigation of an alien's refugee status, ultimately conclude the alien was in fact not a refugee when he entered the country, but still exercise its discretion to graciously decline termination of the alien's refugee status. Such a milquetoast view of "discretion" turns Congress's handiwork on its head and guts USCIS's grant of authority. The statutory scheme delegates to USCIS *full* discretion over the termination of an alien's refugee status; the majority leaving the agency with only *some* discretion is "an improper intrusion by a federal court into the

workings of a coordinate branch of the Government." *Doe*, 146 S. Ct. at 2133 (quoting *Miot v. Trump*, No. 26-5050, 2026 WL 659420, at *4 (D.C. Cir. Mar. 6, 2026) (Walker, J., dissenting)).

At bottom, *Doe* tells us, an agency's subsidiary decisions "[are] part of the process" that leads to the agency's final decision. And because that final decision is unreviewable, so too are the subsidiary decisions leading to it. *Doe* controls this case.